JOHN T. GORMAN
Federal Public Defender

BRIANA E. KOTTKE
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111

Attorney for RICKY JAMES JR. SALAS SANTOS

IN THE UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) | CR 20-00021 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | DEFENDANT'S RESPONSE TO |
| vs. | ) | GOVERNMENT'S MOTION FOR |
| | ) | RECONSIDERATION OF RELEASE |
| | ) | ORDER |
| RICKY JAMES JR. SALAS SANTOS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Ricky James Jr. Salas Santos, through counsel, respectfully files this Response to the Government's Motion for Reconsideration of Release (ECF# 25) in accord with the Court's order (ECF# 26).

Pursuant to CRLR 12(f), this issue is not ripe because the Magistrate Court has not yet had the opportunity to enter its findings of fact and written order of release. Under CRLR 12(f), a party may appeal a Magistrate's non-dispositive decision within 14 days of entry of the Magistrate's "written order or after being served with a copy of the report and recommendations." With that in mind, Mr. Santos respectfully reserves the right to file an Amended Response, if necessary, after review of the Magistrate Judge's report and recommendations and order of release.

**I.**    **The Government's Motion Should be Denied.**

Before for the Court is the Government's Motion for Reconsideration of Order

of Release. (ECF# 25). On October 29, 2020, Magistrate Judge Michael J. Bordallo held a Detention Hearing for Ricky pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142. (ECF# 24). Judge Bordallo orally held at the hearing that Ricky had rebutted the statutory presumption in favor of detention triggered by the charges. He further held that the Government failed to show by clear and convincing evidence that no set of conditions exist that would reasonably assure the safety of the community and had failed to show by a preponderance of the evidence that Ricky is a flight risk. *Id*. Magistrate Judge Bordallo was absolutely correct in his rulings. The Court has available many combinations of conditions that can assure the safety of the community and mitigate risk of flight. When theat is coupled iwth an analysis under the factors set forth in the Bail Reform Act, this Court should deny the Government's Motion for Reconsideration of Mr. Santos's release.

### A. Standard of Review

After a motion for reconsideration is filed under 18 U.S.C. 3145(b), the District Court will conduct its own *de novo* review of the magistrate judge's detention order. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The District Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. "[T]he district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate." *Id*.

Therefore, after review of the record and Magistrate Judge Bordallo's Order of Release, this Court is not required to hold a hearing. Upon its filing, the Court should have the opportunity to review the Magistrate Judge's Order of Release and the parties's respective filings. The Court should decline to hold a hearing in this matter and vacate the hearing currently scheduled because the evidence presented by the Government in its Motion for Reconsideration is the same as was presented at the hearing before the Magistrate. It failed to meet its burden then, and it fails again in its Motion for Reconsideration.

## B. Rebuttable Presumption under 18 U.S.C. § 3142(e)(2)

A rebuttable presumption is by definition able to be overcome. The Government cannot rely on the presumption alone in support of detention. *United States v. Keeton*, 457 F. Supp. 3d 855 (citing *United States v. Moore*, 607 F. Supp. 489 (N.D. Cal. 1985)). The Government still has the burden of proving by clear and convincing evidence that there is no combination of conditions that will protect the safety of the public and by a preponderance of the evidence that no conditions will reasonably assure Mr. Santos's appearance at Court. The presumption shifts the burden of production to the defendant, but not the burden of proof, which remains with the Government. *United States v. Jessup*, 757 F.2d 378, 381-384 (1st Cir. 1985) (Gov. still has burden of proof); *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990) (preponderance for flight risk); 18 U.S.C. 3142(f) (clear and convincing for dangerousness).

At the Detention Hearing on October 29, 2020, Ricky presented evidence sufficient to rebut the presumption of detention. The Government was unable to present evidence that was sufficient under its applicable burdens of proof to establish detention is appropriate despite the presumption. Based on the evidence Ricky provided, it is clear the Court ordered and implemented a combination of conditions that can satisfy the requirements of community safety and mitigate the risk of flight.

### 1) Burden of Production - Evidence Ricky Produced

Ricky produced and presented evidence overcoming the rebuttable presumption. Ricky's now-third-party-custodian ("TPC"), his Uncle Elias Salas, appeared on behalf of the defense. Elias had applied to be Ricky's TPC. United States Probation Officer Jeffery Ventura conducted an investigation into whether Elias's residence would be approved and whether he would be an appropriate TPC. USPO Ventura approved Elias as a TPC, approved the residence, and recommended that the Court release Ricky on a combination of conditions. One of these conditions was that Ricky's Uncle Elias Salas serve as Ricky's TPC.

The Court inquired whether both Elias and his wife Michelle would be willing

to be TPCs. They both agreed. In addition, Elias testified that they would ensure Ricky makes it to all scheduled court hearings and appointments with counsel, U.S. Probation, treatment, or counseling. They also agreed to report any violations of the conditions of release to the Court immediately. In fact, after the hearing both Elias and Michelle signed the TPC agreement and order and are currently serving in that capacity.

Ricky suggested many other conditions that could be imposed to satisfy the necessary considerations. One such condition would be the requirement for electronic location monitoring. Elias and Michelle have agreed, that if required, they would install and pay for a GTA telephone line to enable electronic location monitoring. (*See* ECF# 19). They would also be willing to pay for the monitoring equipment. Ultimately, the Court did not impose this condition because U.S. Probation determined it was more restrictive than necessary to achieve the relevant goals of safety and risk of flight. It did however order that he remain at his residence and not leave Guam. (ECF# 27).

Another condition that was suggested and ordered is for Ricky to obtain a chemical dependency assessment and a mental health assessment if ordered by U.S. Probation. Similarly, the Court ordered him to attend any drug or mental health treatment as ordered by U.S. Probation. Another appropriate condition is for random drug testing, which was also imposed. (ECF# 27). Ricky also suggested that the Court can order him to stay away from other potential witnesses, including his brother. Magistrate Judge Bordallo did in fact impose that condition and further required Ricky to stay away from the family property where the search occurred and any family members who frequent that property. (ECF# 27).

Other potential conditions that were suggested but not imposed are requiring the surrender of any passport and ordering him not to obtain or attempt to obtain a new one, requiring Ricky to seek employment or schooling if appropriate, requiring location

2

monitoring, and setting a curfew. There are still many more conditions that could be crafted in addition to those imposed and suggested that would still achieve community safety and mitigated flight risk. Since Ricky was able to produce evidence that a combination of conditions are available, the Government was required to show that Ricky is a danger to the community by clear and convincing evidence and that he is a risk of flight by a preponderance of the evidence.

### C. Presumption has been rebutted

The Government has presented both oral and written arguments requesting Ricky's detention. (*See* ECF# 24; 25 at 7-8). The "facts" the Government presented both orally and in writing are nothing more than assumptions made by case agents and bald assertions with no support in fact or evidence. They certainly do not support the necessary showing by the Government as to risk of flight or dangerousness to the community.

#### 1) The Government's "Facts" are Unsupported Conjecture

The Government repeatedly presented to the Court, both at the hearing and in writing, that the subject packages were addressed to "the Defendant," who is named Ricky James Jr. Salas Santos, and were mailed to his home. However, based on the Government's own exhibits and discovery, this was shown to be completely false. The packages were addressed to "Shane Salas." (*See* Gov.'s proposed exhibits to detention hearing at ECF# 23). Further, the packages were mailed to a home that is owned by Ricky's grandmother and is a house to which the entire extended family has access.

The Government has posited several times that drugs were found in "Ricky's room" at his grandmother's property. (*See e.g.* ECF# 25 at 2, 6). However, Ricky neither had a room at that house, nor did he live there. Rather, for the past several years, he has lived with his Auntie Michelle and his Uncle Elias Salas in a different village. This was corroborated at the Detention Hearing by Ricky's Uncle Elias. Again, the Government's assertions were false.

3

Besides the inaccurate facts relied on by the Government in support of its request to keep Ricky incarcerated, it has also relied on bald and general assertions that are hyperbolic and completely unsupported by any evidence. The Government has repeatedly stated, "[t]here is a serious risk that Defendant SANTOS will obstruct or attempt to obstruct justice or threaten, injure, or intimidate prospective witnesses or jurors . . . . Defendant SANTOS poses a danger to any other persons and the community . . . . Defendant's presence cannot be reasonably assured, nor can the safety of any other person or the community be ensured." (ECF#25 at 2-3, 8).

In support of these blanket statements, it asserts the following: drugs were found in a house accessible by Ricky's entire extended family, it knows little about his character, he is in good health, he is not employed, he has lived in Guam most of his life, he is believed to be single, he is believed to have used drugs in the past, he has no felony criminal history but does have a warrant for non-extraditable misdemeanors in Las Vegas, that it does not know whether he has a history of missing court appearances, and that he was not under supervision at the time of the alleged offense. (ECF# 25 at 6-8). In essence, the Government has no proof that he would be a flight risk or a danger to the community. Almost all of these factors weigh in support of release. Although the weight of the evidence here is not very strong against Ricky, it is the factor of least importance when determining whether release or detention is appropriate. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). When these factors are coupled with the combination of conditions imposed by the Court, it is clear the Government has failed to carry its burden of proof despite the presumption.

**D.     Constitutional Presumption of Innocence**

It must be remembered that Ricky has an absolute and unwavering constitutional right to the presumption of innocence. Pretrial detention restricts a person's fundamental liberty despite this presumption of innocence. As put best by Justice Thurgood Marshall, joined by Justice William J. Brennan Jr.:

4

> Honoring the presumption of innocence is often difficult; sometimes we must pay substantial social costs as a result of our commitment to the values we espouse. But at the end of the day the presumption of innocence protects the innocent; the shortcuts we take with those whom we believe to be guilty injure only those wrongfully accused and, ultimately, ourselves.
>
> Throughout the world today there are men, women, and children interned indefinitely, awaiting trials which may never come or which may be a mockery of the word, because their governments believe them to be "dangerous." Our Constitution, whose construction began two centuries ago, can shelter us forever from the evils of such unchecked power. Over 200 years it has slowly, through our efforts, grown more durable, more expansive, and more just. But it cannot protect us if we lack the courage, and the self-restraint, to protect ourselves.

*United States v. Solerno*, 481 U.S. 739, 767 (1987) (Marshall, J., dissenting, joined by Brennan, J.).

## II. CONCLUSION

The Government has not met its burden to show by clear and convincing evidence that Ricky is a danger to the community or to show that he is a flight risk by a preponderance of the evidence. Ricky met his burden of production to show that there are many combinations of conditions that will satisfy the goals of community safety and court attendance. In fact, there are several conditions, such as location monitoring, that were not imposed as they were found to be too onerous. The Court should deny the Government's Motion for Reconsideration of the Release Order, and vacate the upcoming hearing.

DATED: Mongmong, Guam, November 6, 2020.

/s/



Briana E. Kottke
Assistant Federal Public Defender
District of Guam

Attorney for RICKY JAMES JR. SALAS SANTOS

5