JOHN T. GORMAN
Federal Public Defender

BRIANA E. KOTTKE
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111

Attorney for Ricky James Jr. Salas Santos

IN THE UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) | CR 20-00021 |
|---|---|---|
| Plaintiff, | ) ) | MOTION TO COMPEL DISCOVERY |
| vs. | ) | AND BRIEF IN SUPPORT |
| | ) ) | |
| RICKY JAMES JR. SALAS SANTOS, | ) ) | |
| Defendant. | ) ) ) | |

Ricky James Jr. Salas Santos, through counsel, respectfully moves the Court for an order compelling the government to produce additional discovery related to trial and trial motions and for a hearing before Chief Judge Tydingco-Gatewood.

## I. PROCEDURAL HISTORY

On August 27, 2020, the government filed a complaint against Ricky charging him with one count of attempted possession of methamphetamine with intent to distribute. ECF 1. On September 9, 2020, the Grand Jury returned an indictment charging Ricky with one count of attempted possession of methamphetamine with intent to distribute and one count of possession of methamphetamine with intent to distribute. ECF 6. Ricky is facing a 10-year mandatory minimum term and a

1

maximum term of life imprisonment. *Id*.

On September 1, 2020, Ricky sent the government an 8-page, comprehensive discovery request letter. *See* **Exhibit A**. The government's discovery was due by September 17, 2020. ECF 10. The Court granted the government's unopposed request for additional time to provide discovery, and ordered it to provide discovery by October 1, 2020. ECF 11--12.

After Ricky and his counsel reviewed the initial discovery, it became clear supplemental discovery was needed in order to prepare motions, prepare a trial defense, and for undersigned to provide effective assistance of counsel to Ricky. As a result, on October 15, 2020, Ricky filed a motion to continue the briefing schedule and trial, which was granted. ECF 18, 22.

On October 19, 2020, Ricky propounded his 1st Supplemental Discovery Request via email requesting 10 different categories of items and requesting to set up a time to view the government's unredacted discovery file. *See* **Exhibit B**. At a detention hearing on October 24, 2020, Magistrate Bordallo ordered the government to provide the defense with all exculpatory evidence pursuant to the Due Process Protections Act and *Brady v. Maryland* and its progeny. ECF 24; *see* FED. R. CRIM. P. 5(f) (2020). The Court further warned "failing to do so in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the Court." *Id*.

Three months later, on January 5, 2021, with the motions deadline again quickly approaching and almost all of the supplemental discovery still outstanding,

undersigned sent an email to the government about the outstanding supplemental discovery. *See* **Exhibit C**. The next day, Ricky again filed a motion to continue the briefing schedule and trial for a period of 90 days to allow to government to provide the requested discovery, which was again granted. ECF 46--47.

On February 19, 2021, undersigned sent another email inquiring about the outstanding 1st Supplemental Discovery Request from October of 2020. *See* **Exhibit D**. The email noted that only documents relating to Coast Guard Officer Wellin were produced, with almost all other requested materials outstanding. In addition, this email contained a 2nd Supplemental Discovery Request seeking the Grand Jury transcript. To date, the government has not responded to this email, and Ricky has not received any supplemental discovery since November 17, 2020.

Thus, he files this motion to compel the government to provide necessary exculpatory and impeachment materials as well as missing lab reports and other items that are necessary to preparing Ricky's defense.

## II. LAW

### A. FEDERAL RULES OF CRIMINAL PROCEDURE 16 AND 5

Under Rule 16 of the FEDERAL RULES OF CRIMINAL PROCEDURE, defendants can request certain categories of information from the government. Rule 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession,

3

custody, or control and:

(i) the item is material to preparing the defense;
(ii) the government intends to use the item in its case-in-chief at trial; or
(iii) the item was obtained from or belongs to the defendant.

Under Rule 5(f), Pub. L. N. 116-182, 234 Stat. 894 (Oct. 21, 2020), "in all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law."

### B. JENCKS ACT

The Jencks Act, 18 U.S.C. § 3500, the government must provide the Defendant access to witness statements after the witness has testified on direct examination at trial. This applies to all statements in the possession of the United States. 18 U.S.C. §§ 3500(a), (b).

### C. *BRADY V. MARYLAND* AND PROGENY

In *Brady v. Maryland*, the United States Supreme Court held that a defendant has a right to the production of exculpatory evidence in the possession of the government or its agents. 373 U.S. 83 (1963). The Due Process Clauses of both the Fifth and Fourteenth amendments and *Brady* and its progeny, require the prosecution to disclose exculpatory evidence that "is material either to guilt or to punishment." *Id.*

at 87.  Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. The inquiry considers nondisclosed evidence "collectively, not item by item." *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).  *Brady* applies to impeachment and other evidence relevant to the credibility of the government witnesses.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).

The government must disclose *Brady* information even absent a discovery request by the defendant.  *United States v. Agurs*, 427 U.S. 97, 108 (1976).  The obligation is not excused because a prosecutor is unaware of exculpatory evidence; rather, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437.

In *United States v. Henthorn*, the Ninth Circuit Court of Appeals held that, upon the Defendant's request, the government must examine the personnel files of its law enforcement witnesses and disclose information material to their credibility.  931 F.2d 29, 31 (9th Cir. 1991).  The government's obligation arises when the defendant makes a demand for production; the defense need not make a showing of materiality.  *Id*.

5

### D. CRIMINAL LOCAL RULES

Guam District Court has local criminal rules ("CRLR") that supplement the FEDERAL RULES OF PROCEDURE and EVIDENCE. Under CRLR 16, the government must follow the obligations of FED. R. CRIM. P. 16. While not superceding the Jencks Act, CRLR 16(b)(2) makes clear the government and defendant are "to provide requested materials and statements [ ] to the other party sufficiently in advance so as to avoid delays or interruptions at trial." CRLR 16(b)(2)(A). In addition, this local rule requires the government to "advise all government agents and officers involved in the case to preserve all rough notes." CRLR 16(b)(2)(D). Local, state, and task force officers are considered "government agents and officers." *See United States v. Fort*, 472 F.3d 1106, 1119 (9th Cir. 2007). Therefore, it is clear the government has an obligation to seek these materials not only from federal agents, but also local and task force officers who assisted in the investigation.

## III. ANALYSIS

### A. DUE DILIGENCE

Under CRLR 16(b)(3)(d), "[a]n attorney shall not file a discovery motion without first communicating with opposing counsel." Here, Ricky has made 4 formal written requests and follow-ups in addition to several phone calls. *See* **Exhibits A–D**.

Ricky's initial discovery request letter to the government went out on September 1, 2020. **Exhibit A**. On September 11, 2020, the government provided Ricky with Bates RSANTOS00001 000315. On September 22, 2020, the government provided

6

Ricky with the analysis and extractions of 3 cell phones. Several days later, on September 25, 2020, the government provided RSANTOS000316-000348. Ricky received RSANTOS000349 000352 on October 2, 2020. On October 15, 2020, Ricky filed an unopposed motion to continue the trial and briefing schedule because supplemental discovery was necessary. ECF 18. After having a chance to review and discuss the discovery that had been received to date, Ricky propounded his 1st Supplemental Discovery Request requesting the following items:



*See also* **Exhibit B**.

After this 1st Supplemental Discovery Request went out on October 19, 2020, the government provided 4 additional batches of discovery: RSANTOS000353--00366 on October 21, 2020, which consisted of Coast Guard Officer Wellin's CV and Cellebrite training certificate; RSANTOS00367--00380 on October 30, 2020, consisting of Coast Guard Officer Wellin's report and handwritten notes, an additional report of some but not all officers involved in the surveillance and arrest of Ricky (including corrections to DEA SA Jason Corea's initial report about what color shirt the suspect was wearing and corrections to several references to chain of custody documents); RSANTOS000381--000383 on November 2, 2020, which contained one laboratory report regarding DEA Ex. 7; and finally RSANTOS000384 on November 17, 2020, which contained a recording of law enforcement's attempt to interview Ricky and his invocation of counsel.

After this flurry of discovery, Ricky was still missing almost all of the material he requested in his 1st Supplemental Discovery Request with the exception of: handwritten notes of Coast Guard Officer Wellin; one report regarding use of clue spray by an officer uninvolved in the clue spray search; and lab results/report for DEA exhibit 7.

On January 5, 2021, Ricky's counsel wrote another email to the government about the outstanding supplemental discovery, and the need for same prior to being able to file substantive motions. **Exhibit C**. This email discussed the need to again

8

continue the motions deadline and briefing schedule given the outstanding supplemental discovery. On January 6, 2021, Ricky filed a second motion to continue his trial and briefing schedule to obtain the necessary supplemental discovery. ECF 46. This motion was granted. ECF 47.

After still hearing nothing, on February 19, 2021, undersigned counsel sent another reminder email and also propounded Ricky's 2nd Supplemental Discovery Request in which he now also seeks the Grand Jury Transcript. **Exhibit D**. To date, the government has not provided any additional discovery materials or responded to this February email. With that in mind, Ricky requests an order compelling the government to provide the following items as previously requested after trying to obtain them informally.

### B. MATERIALS REQUESTED

#### 1. Handwritten notes of officers, reports, and policies

Under the local criminal rules, the Jencks Act, and Ninth Circuit law, law enforcement officers are required to preserve their handwritten and rough notes because they are discoverable. *See* CRLR 16(b)(2)(D); *United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976).

The handwritten notes in this case are necessary because the police reports are incomplete and inaccurate. They also contain exculpatory and impeachment evidence, which could prove necessary to a challenge to the warrants and grand jury indictment. For example, DEA Special Agent Jason M. Correa's initial report and

9

recollections--which were the basis for several search warrants and likely his grand jury testimony--were inaccurate. In the materials received in November of 2020, SA Correa made a rather large and significant change to his initial recollection and report he changed the color of the shirt he claims Ricky was wearing from gray to turquoise.

> **U.S. Department of Justice**
> **Drug Enforcement Administration**
>
> **REPORT OF INVESTIGATION** Page 1 of 2
>
> 1. Program Code  2. Cross File  Related Files  3. File No.  4. G-DEP Identifier
> 5. By: Jason M Correa, SA
>    At: GUAM RESIDENT OFFICE
> 6. File Title
> 7. ☐ Closed ☐ Requested Action Completed
>    ☐ Action Requested By:
> 8. Date Prepared
>    10-28-2020
> 9. Other Officers: TFO Jan Dizon TFO Henry James SA Willie Hayes SA Erwin Fejeran
> 10. Report Re: Corrective DEA 6 for "Controlled Delivery of SALAS package to 118 Abanbang Loop."
>
> **DETAILS**
>
> On August 31, 2020, SA Jason Correa authored DEA 6 "Controlled Delivery of SALAS package to 118 Abanbang Loop." involving the investigation of Ricky James JR Salas SANTOS (hereinafter referred to as SANTOS). The investigation was a joint operation involving Drug Enforcement Administration Guam Resident Office (DEA GRO), United States Postal Inspectors Service (USPIS), and Homeland Security Investigations (HSI). This DEA 6 is to correct an error discovered in the authored report by SA Correa.
>
> 1. In paragraph four (4), first sentence, SA Correa states; "At approximately 4:32 PM, an Asian Pacific Islander male wearing a gray shirt and tan shorts (later identified to be Ricky James JR Salas SANTOS) traveling in a gray Toyota Hilux baring Guam license plates IN1976 (hereinafter referred to as the gray Toyota) had stop by the mailbox and picked up the SALAS package." this is discovered to be a mistake by SA Correa. SANTOS was not observed wearing a gray shirt he was observed wearing a turquoise shirt. The first sentence in paragraph four (4) should state;
>
> "At approximately 4:30 PM, TFO Henry James, TFO David Elliott, and SA Willie Hayes observed a Pacific Islander male wearing shorts and a turquoise shirt (later identified to be Ricky James JR Salas SANTOS) traveling in a gray Toyota Hilux baring Guam license plates IN1976

RSANTOS00379.

The reports of another agent, which were written *after* Ricky's 1st Supplemental Discovery Request, also tried to correct this gaping mistake in SA Correa's initial report:

10

> U.S. Department of Justice
> Drug Enforcement Administration
>
> **REPORT OF INVESTIGATION** Page 1 of 2
>
> 1. Program Code   2. Cross Related Files   3. File No.   4. G-DEP Identifier
>                      File
>
> 5. By: Henry W James, TFO                    6. File Title
>    At: GUAM RESIDENT OFFICE
>
> 7. ☐ Closed ☐ Requested Action Completed    8. Date Prepared
>    ☐ Action Requested By:                      10-25-2020
>
> 9. Other Officers: TFO David Elliott, SA Willie Hayes
>
> 10. Report Re: Surveillance of SALAS package retrieval at Ababang Loop cluster box on 8/26/20 and correction to DEA-6 authored by SA Jason Correa on 8/31/20.
>
> **DETAILS**
>
> 1. Reference is made to the Report of Investigation (ROI) authored by SA Jason Correa dated August 31, 2020, report titled: Controlled Delivery of SALAS package to 118 Abanbang Loop. This Report of Investigation shall also serve as a correction to Item Number 4 of the above referenced Report of Investigation.

RSANTOS00375. These reports only raise more questions than answers and support the Defense's theory that the records are both inaccurate and incomplete.

The notes of the officers involved with the surveillance will greatly assist in determining if there are additional holes or inconsistencies in the recollections of the investigating officers and whether these inaccuracies made their way into search warrant applications or Grand Jury testimony. These notes could not only be exculpatory, but could also be relevant to impeachment of the government's witnesses.

Other records indicate that TFOs Henry James, TFO David Elliott, and SA Willie Hayes were assigned to one surveillance unit while others (presumably DEA SA Correa and perhaps HSI SA Fejeran and TFO Calvo) were assigned elsewhere. None of their notes from this surveillance have been produced, and it is unclear where the other surveillance teams were located. Many of these officers either did not write reports at all, or they wrote reports that have not been produced.

11

As a result, in addition to the actual records, if none exist, Ricky is now requesting copies of the policies of procedures relating to drafting reports, drafting records, and otherwise preserving surveillance efforts and actions taken during in the investigation and arrest of a suspect.

### 2. Clue spray report and all other missing reports

After thorough review of the materials the government has provided to date, it is clear there are missing and incomplete reports. In another example, Ricky was searched on two different occasions with a black-light to look for the presence of "clue spray." According to law enforcement clue spray will often be found on the person who opens a box containing items that have been sprayed with clue spray. The presence of clue spray is considered "inculpatory," as it tends to show someone's involvement with the sprayed contraband. It stands to reason that if a suspect does *not* have clue spray on his person, this lack of evidence would be considered exculpatory.

Ricky indicated to counsel that after being subjected to 2 searches with the black-light, the officer was unable to find any clue spray on his person. Despite Ricky's September 1, 2020 request for exculpatory evidence, confirmation of the absence of clue spray on Ricky's person was not disclosed until after his 1st Supplementary Discovery was propounded on October 17, 2020 specifically requesting the missing clue spray reports. *See* **Exhibit A**.

The only record of these clue-spray/black-light searches is found in DEA SA Jason Correa's report on RSANTOS000373. Interestingly, SA Correa is not the officer

12

who preformed these searches; it was actually TFO Jon Calvo. TFO Jon Calvo provided no record relating to these searches, despite their exculpatory nature. In SA Correa's third-hand description of TFO Calvo's search of Ricky, he only mentions that one search was performed rather than two. SA Correa's then posits several conclusory statements about Ricky not wearing a shirt when he was arrested and why that would affect the effectiveness of the clue spray.

> **U.S. Department of Justice**
> **Drug Enforcement Administration**
>
> **REPORT OF INVESTIGATION** Page 1 of 2
>
> 1. Program Code  2. Cross File  Related Files  3. File No.
> 5. By: Jason M Correa, SA
>    At GUAM RESIDENT OFFICE
> 6. File Title
> 7. ☐ Closed ☐ Requested Action Completed
>    ☐ Action Requested By:
> 8. Date Prepared
>    10-15-2020
> 9. Other Officers: TFO Jon Calvo
>
> 10. Report Re: Information regarding Controlled Delivery Operation August 26, 2020 on Ricky James Jr Salas SANTOS.
>
> **DETAILS**
>
> On August 26, 2020 investigators from Guam Resident Office (GRO), Homeland Security Investigations (HSI), and United States Postal Inspectors Service (USPIS) conducted a controlled delivery operation on Ricky James JR Salas SANTOS residence at 118 Abanbang Loop, Yigo, Guam. During the approach SANTOS was detained by USPIS TFO Jon Calvo and tested for clue spray (chemical substance identified by black light). Clue Spray is utilized during the control delivery to identify any targets which have breached the shamed parcel or touched the contents within the shamed parcel.
>
> 1. SANTOS was detained by USPIS TFO Calvo during the approach while investigators from DEA GRO, HSI, and USPIS secured the residence for any possible threats. TFO Calvo had initiated a black light test on SANTOS to identify any clue spray on the hands of SANTOS.
>
> 2. TFO Calvo stated that the results of the black light test showed SANTOS to have no indicators of clue spray on his hands. TFO Calvo stated that SANTOS was sweating profusely (all over his body and hands) and was shirtless. TFO Calvo stated that this circumstance would have led to any traces of clue spray being wiped off or failing to being left behind on SANTOS' hand.

RSANTOS00373. SA Correa makes the above-statement about Ricky allegedly having no shirt in addition to his allegedly mistaken previous statement about Ricky wearing a gray shirt that SA Correa later changed to a turquoise shirt as mentioned above.

13

A thorough review of the materials provided by the government also show further inconsistencies and the likely existence of additional reports and notes. For example, one report, RSANTOS-000373 authored by SA Correa, identified TFO Jon Calvo as the officer who arrested Ricky: "During the approach SANTOS was detained by USPIS TFO Jon Calvo and tested for clue spray (chemical substance identified by black light)." However, just several pages later, SA Correa identifies another officer, HSI SA Erwin Fejeran, as the arresting officer: "SANTOS was placed in handcuffs by HSI SA Erwin Fejeran." RSANTOS-000380. Where are the reports of TFO Calvo and HSI SA Fejeran? Where are their notes? Who really arrested Ricky? It also appears reports from TFO Jan Dizon, TFO Willie Hays, TFO David Elliott, TFO Shawn Ayuyu, TFO De Chavez, and SA Jefferey Knight have been omitted, were never written, or were never produced.

Again, Ricky requests an order to produce the reports, and if none exist, copies of policies of procedures relating to drafting reports, drafting records, and otherwise preserving surveillance efforts and actions taken during the investigation and arrest of a suspect from all agencies involved in this investigation, including but not limited to: USPIS, DEA, GPD, HSI, and any separate rules or procedures relating to task force officers of the above-entities or related entities.

### 3. *Brady*, *Giglio*, and *Henthorn* materials

A defendant has a right to the production of exculpatory evidence in the possession of the government. *Brady v. Maryland*, 373 U.S. 83 (1963). The

14

government's *Brady* obligation extends not only to potentially exculpatory evidence, but also to evidence affecting the credibility of the government's witnesses. This principle was first established in *Giglio v. United States*, 405 U.S. 150 (1972), and has been repeatedly reaffirmed. *See Henthorn*, 931 F.2d 29, 30--31; *United States v. Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992); *United States v. Brumel-Alvarez*, 976 F.2d 1235 (9th Cir. 1992).

The reliability of each and every law enforcement officer involved in this investigation has the ability to affect the outcome in this case. This is especially true given the confusion and contradictory records produced by DEA SA Jason Correa. The reliability of his statements could also bring into question the veracity of the probable cause determinations made by the Court and the Grand Jury regarding the issuance of various warrants, the complaint, and the indictment. Without having all of the records and the *Brady* materials including *Giglio* and *Henthorn* materials, it is impossible for Ricky to tell if misstatements were made that resulted in an unlawful seizure, search, and arrest.

With that in mind, Ricky requests an order for all missing reports, the Grand Jury testimony, hand-written statements and recollections of the officers involved, relevant polices and procedures of all officer's regarding preservation of investigation materials, and *Brady*, *Giglio*, and *Henthorn* materials relating to all witnesses and the following members of law enforcement: DEA SA Jason M. Correra, SA Willie Hayes, HSI SA Erwin Fejeran, TFO David Elliott, TFO Henry James,

15

TFO Jan Dizon, TFO Jeremiah Cruz, TFO De Chavez, and TFO Shawn Ayuyu.

### 4. Dog sniff records

One of the applications for a search warrant make clear that a K-9 Officer named "Biker" was used to identify a package at issue or a related package as potential contraband. The reliability and training of a dog can affect its ability identify and alert to the presence of drugs. Since a dog was used as a probable cause basis for a search warrant, the dog's reliability and training are directly relevant to potential challenges to the indictment or searches in Ricky's case. *See United States v. Lambert*, 351 F. Supp. 2d 1154 (D. Kan. 2004). Ricky requests an order compelling the government to provide all of K-9 Biker's training records and certifications.

### 5. Other Suspects

Discussions with agents and the prosecutor relating to the complaint, indictment, detention hearing, and investigation revealed that one of the primary targets of the investigation is Ricky's brother, who also has access to the property where Ricky was arrested. Ricky requests all reports and notes relating to surveillance of or other recordings or calls about investigation into Ricky's family members, post office boxes, and properties including his brother's.

He further requests any evidence that someone other than Ricky committed, or was ever been suspected of committing the crime charged, including other family members. *Miller v. Angliker*, 848 F.2d 1312, 1321 1323 (2nd Cir. 1988) (reversible error not to disclose evidence that person other than defendant committed murders;

16

*Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) (reversible error not to disclose existence of suspect who resembled defendant); *James v. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978); *Sellers v. Estelle*, 651 F.2d 1074, 1076  1077 (5th Cir. 1981) (failure to disclose police report indicating guilt of another is reversible error).

Evidence of investigations into others could also lead to discovery or disclosure of exculpatory evidence that is required to be produced by *Brady* and its progeny.

### 6. Lab Results

The results for DEA Exhibits 6, 7, 8, 9, 12, and 14 have been requested on numerous occasions. To date, only the results for DEA Exhibit 7 have been received. In addition, the attachments to DEA Exhibits 7 and 13 have been requested, but have not been received. These documents are required to be produced by Federal Rule of Criminal Procedure 16 and CRLR 16, and Ricky requests an order for production of these laboratory results, reports, and related documents.

### 7. Chain of Custody Documents

Ricky has also repeatedly requested missing chain of custody documents. Several of the law enforcement reports have sections detailing handling of evidence, but none contain the actual chain of custody. For example:

> 23. REMARKS:
> Exhibit 9 consists of SSEE ES000046146 containing one (1) zip-lock bag further containing several zip-lock bags that contain a crystal-like substances weighing approximately 55.1 gross grams that was seized from 118 Ababang Loop Yigo, Guam on August 26, 2020. Exhibit 9 was transported to the USPIS Guam office by TFOs David Elliot and Henry James. USPIS PI Benjamin Whitsett maintained complete care, control and custody of the exhibit until it was transferred to TFO Jeremiah Cruz as witnessed by SA Jason Correa on September 3, 2020. TFO Cruz as witnessed by SA Correa processed Exhibit 9 and later placed it into the temporary drug vault. On September 4, 2020, TFO Cruz as witnessed by TFO Jan Dizon retrieved Exhibit 9 and mailed it to the Southwest Regional Laboratory via registered

17

Clearly the officers are getting this information from the actual chain of custody log. Having the actual chain of custody and evidence log is even more important now because yet another correction has been made to the initial reports, but this time about the chain of custody. This correction again came out *after* Ricky propounded his 1st Supplemental Discovery Request in October of 2020.

---

**U.S. Department of Justice**
**Drug Enforcement Administration**

**REPORT OF INVESTIGATION**                                      Page 1 of 2

| 1. Program Code | 2. Cross Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|

5. By: Jason M Correa, SA
   At: GUAM RESIDENT OFFICE

6. File Title

7. ☐ Closed ☐ Requested Action Completed
   ☐ Action Requested By:

8. Date Prepared
   10-26-2020

9. Other Officers: TFO Shawn Ayuyu, SA Jeffery Knight

10. Report Re: Correction to Exhibits N-28 and N-29

**DETAILS**

1. On October 21, 2020, SA Jason Correa entered Exhibits N-28 and N-29 into custody for safe keeping at the Guam Resident Office. SA Correa authored the DEA 7 containing Exhibits N-28 and N-29. SA Correa had placed both Exhibits N-28 and N-29 in the same SSEE bag #S000676760. SA Correa had wrote in the DEA 7 "Exhibit N-28 consists of SSEE# S000676760" and "Exhibit N-29 consists of SSEE# S000676760" regarding both Exhibits. This DEA 6 serves as a corrective action to correct the following listed errors.

2. SA Correa removed both Exhibits N-28 and N-29 from SSEE# S000676760 evidence bag and were placed in separate SSEE evidence bags. Exhibit N-28 was placed in SSEE #S001249666 and Exhibit N-29 was placed in SSEE #S001249665 as witnessed by TFO Shawn Ayuyu. Both Exhibits N-28 and N-29 were turned over to evidence custodian SA Jeffery Knight for safekeeping at the Guam Resident Office (GRO). Below is the chain of custody for both Exhibits N-28 and N-29.

**Chain of Custody**

Exhibit N-28 consists of SSEE #S001249666 that contains one (1) compact disc with audio recording of Ricky James Jr Salas SANTOS interview conducted by United States Postal Inspector Benjamin Whitsitt and Drug Enforcement Administration Special Agent Jason Correa on from August 26, 2020. SA Jason Correa as witnessed by TFO Shawn Ayuyu downloaded the

> recording onto the compact disc, labeled it Exhibits N-28, and processed it into evidence. Exhibit N-28 was submitted to the non-drug evidence custodian SA Jeffery Knight for storage and safe keeping.
>
> Exhibit N-29 consists of SSEE #S001249665 containing one (1) compact disc of evidence report on coordinates in Excel format regarding the controlled delivery on Ricky James Jr Salas SANTOS August 26, 2020. SA Jason Correa as witnessed by TFO Shawn Ayuyu downloaded the file evidence report on coordinates regarding the controlled delivery on Ricky James Jr Salas SANTOS onto the compact disc, labeled it Exhibit N-29, and processed it into evidence. Exhibit N-29 was submitted to the non-drug evidence custodian SA Jeffery Knight for storage and safe keeping.
>
> 3. This DEA 6 serves as a corrective action for the following errors on the DEA 7 and what changes were utilized to correct the errors. The chain of custody is listed to document any changes of the custodial process for Exhibits N-28 and N-29.

RSANTOS000377 00378. Just because a section of the report is labeled as "chain of custody" does not make it so. Ricky respectfully requests the actual chain of custody and evidence log on each and every exhibit/piece of evidence processed during this investigation.

## IV. CONCLUSION

After diligent efforts and based on the foregoing, Ricky respectfully requests an order compelling the government to provide the following items:

(1) Handwritten, rough and/or field notes of all officers/agents involved in the investigation;

(2) Copies of policies of procedures relating to drafting reports, drafting records, and otherwise preserving surveillance efforts and actions taken during the investigation and arrest of a suspect from all agencies involved in this

19

investigation, including but not limited to: USPIS, DEA, GPD, HSI, and any separate rules or procedures relating to task force officers of the above-entities;

(3) Grand Jury Transcripts;

(4) Missing reports on all areas of the investigation;

(5) *Brady*, *Giglio*, and *Henthorn* materials of all government witnesses and law enforcement including but not limited to: David Elliott, Henry James, Jan Dizon, Jeremiah Cruz, Jason Correa, Shaw Ayuyu, and Erwin Fejeran;

(6) All investigative and other reports resulting in the initial package being identified as "suspicious" and reports on related investigations;

(7) K-9 Biker's training records and certifications and the same for any other K-9 officers used in this case;

(8) Any and all materials, reports, surveillance, witness statements, and confidential informant statements, relating to the investigation of any other individual or individual(s), including Ricky's family, suspected in this investigation;

(9) Reports on DEA exhibits 6, 8, 9, 12, and 14;

(10) Attachments to DEA exhibits 7 and 13;

(11) All licenses and necessary certifications on the Celebrite or other software used to image or review phones seized during the investigation; and

(12) All chain of custody documents and evidence logs from all evidence collected during the investigation.

DATED: Mongmong, Guam, March 3, 2021.

/s/  Briana E. Kottke
Assistant Federal Public Defender
District of Guam

Attorney for Ricky James Jr. Salas Santos