DISTRICT COURT OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 20-00021 |
|---|---|
| Plaintiff, | |
| vs. | **ORDER** |
| RICKY JAMES JR. SALAS SANTOS, | Granting in Part and Denying in Part Defendant's Motion to Compel Discovery |
| Defendant. | (ECF No. 50) |

Pending before the court is the Defendant's Motion to Compel Discovery (the "Motion to Compel"). *See* Mot. Compel, ECF No. 50. On June 8, 2021, the court heard oral argument on the motion. *See* Minutes, ECF No. 86. At the hearing, defense counsel confirmed that the only outstanding discovery requests were the seven categories of information set forth in the Defendant's Reply brief.[1] While the court granted most of the Defendant's requests for discovery, the court stated

---

[1] These seven categories are as follows:

1. Handwritten, rough and/or field notes of all officers/agents involved in the investigation;
2. Copies of policies of procedures relating to drafting reports, drafting records, and otherwise preserving surveillance efforts and actions taken during the investigation and arrest of a suspect from all agencies involved in this investigation, including but not limited to: USPIS, DEA, GPD, HSI, and any separate rules or procedures relating to task force officers of the above-entities;
3. Missing reports on all areas of the investigation;
4. *Brady, Giglio*, and *Henthorn* materials of all government witnesses and law enforcement including but not limited to: David Elliott, Henry James, Jan Dizon, Jeremiah Cruz, Jason Correa, Shaw Ayuyu, and Erwin Fejeran;
5. Any and all materials, reports, surveillance, witness statements, and confidential informant statements, relating to the investigation of any other individual or individual(s), including Ricky's family, suspected in this investigation;

that it would take the motion under advisement with regard to the Defendant's request for policies of procedures relating to the drafting of reports and conducting investigations. Having reviewed the relevant filings and applicable case law and after hearing argument from the parties, the court issues this Order granting in part and denying in part the Defendant's Motion to Compel.

## BACKGROUND

1. Arrest and Indictment

On August 27, 2020, the United States filed a Complaint charging the Defendant with Attempted Possession of Methamphetamine with Intent to Distribute.[2] *See* Compl., ECF No. 1. Defendant appeared in court that day, and the Federal Public Defender was appointed to represent him. *See* Minutes, ECF No. 2. The court detained the Defendant because he had not introduced any evidence to rebut the presumption under 18 U.S.C. § 3142(e)(3), but the matter was set for a bail hearing on September 1, 2020.[3] *Id.* and Order of Detention, ECF No. 7.

On September 9, 2020, an Indictment was filed charging the Defendant with Attempted

---

6. All licenses and necessary certifications on the Celebrite or other software used to image or review phones seized during the investigation; and
7. All chain of custody documents and evidence logs from all evidence collected during the investigation.

*See* Reply at 6-7, ECF No. 58.

[2] According to the Complaint, on August 24, 2020, the postal service intercepted a package addressed to a "Shane Salas" which was later found to have contained about 470 grams of a white crystalline substance that tested presumptive positive for methamphetamine. Compl. at ¶3, ECF No. 1. A tracking device was installed, and a controlled delivery conducted on August 26, 2020. *Id.* at ¶¶4-5. The Defendant picked up the package and took a circuitous route around the neighborhood before returning to his residence with the package. *Id.* at ¶5. When the tracking device emitted a breach signal, the Defendant was seen exiting the residence and driving away in his vehicle. *Id.* A traffic stop was conducted, and the Defendant was detained. *Id.* The package's contents containing the sham was scattered on a bed in one of the rooms within the residence, and the tracking device and packaging box material was found tossed in the fire pit outside the home. *Id.* Defendant admitted that he picked up the package but claimed to have just placed it in the residence. *Id.* During a subsequent search of the residence, investigators found about 1,191 grams of suspected methamphetamine concealed in a bag of dog food. *Id.* at 6.

[3] On September 1, 2020, the parties appeared before the court, but Ms. Kottke moved to withdraw her request for a detention hearing, subject to bringing a motion for release at a future date. *See* Minutes, ECF No. 4.

Possession of Methamphetamine with Intent to Distribute and Possession with Intent to Distribute Methamphetamine Hydrochloride. *See* Indictment, ECF No. 6. He was arraigned on September 10, 2020, and entered not guilty pleas. *See* Minutes, ECF No. 9. Trial was thereafter set for November 17, 2020.[4] *See* Trial Sched'g Order, ECF No. 10.

### 2. Pretrial Release and Revocation

On October 29, 2020, the court held a detention hearing and, over the government's objections, ordered the Defendant released to two third party custodians. *See* Minutes, ECF No. 24. Among other pretrial release conditions imposed, the Defendant was ordered to "submit to testing for a prohibited substance . . . [and] must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing." Order Setting Conditions of Release at ¶7(n), ECF No. 27.

On December 17, 2021, the court modified the Defendant's release conditions to place him on home detention with location monitoring and ordered him to participate in drug treatment. The modification was a result of the Defendant admitting that he had missed five drug tests, submitted a diluted urine sample, admitted to the using "meth." *See* Minutes, ECF No. 38.

On January 26, 2021, the court revoked the Defendant's release and ordered him detained after the Defendant admitted he missed another drug test and used methamphetamine three times. *See* Minutes, ECF No. 49.

### 3. Filing of Motion to Compel

On March 3, 2021, the Defendant filed the instant Motion to Compel. *See* Mot. Compel, ECF No. 50. According to the motion, defense counsel made several attempts to obtain "supplemental discovery" from the United States. On October 19, 2020, the Defendant propounded his 1st Supplemental Discovery Request via email, requesting 10 different categories of items. *Id.* at 2 and Ex. B thereto. On January 5, 2021, the Defendant emailed government counsel to follow up on the outstanding supplemental discovery. *Id.* at 2-3, and Ex. C. This was followed up with a

---

[4] The trial date was later moved to May 18, 2021, at the request of the Defendant, *see* ECF Nos. 18, 22 and 46-47. Trial has since been vacated in light of the pending Motion to Compel. *See* Order, ECF No. 73.

another email on February 19, 2021, as to materials outstanding and also to propound a 2nd Supplemental Discovery Request. *Id.* at 3 and Ex. D. Defense counsel stated because the government had not responded to its email, the Defendant had no choice but to bring the instant Motion to Compel, which listed 12 categories of information sought by the Defendant. *Id.* at 19-20.

On March 9, 2021, the United States filed it's Opposition to the motion. *See* Opp'n, ECF No. 56. The government stated it provided the Defendant with 315 pages of discovery on September 17, 2020. *Id.* at 3. Five days later on September 22, 2020, the United States also provided the Defendant with four compact disks containing extractions from two of the Defendant's phones. *Id.* at 4. The government supplemented the discovery with other disclosures on September 25, 2020, October 2 and 30, 2020, November 2 and 17, 2020, and March 4 and 9, 2021. *Id.* at 5-8. The United States contends it provided the Defendant with everything in its possession that he is entitled to review, but the Defendant has not met his burden of showing entitlement to some of the requested information.

On March 24, 2021, the Defendant filed a Reply to the United States' Opposition. *See* Reply, ECF No. 58. The list of items sought in the Reply was reduced from 12 to seven categories of information. *Id.* at 4-5.

On June 8, 2021, the court heard argument on the Motion to Compel. *See* Minutes, ECF No. 86. The court granted certain defense requests for discovery and took under advisement the Defendant's request for policies of procedures relating to the drafting of reports and conducting investigations.

## ANALYSIS

The court will separately address each of the seven categories of information that the Defendant seeks.

1. <u>Handwritten, rough and/or field notes of all officers/agents involved in the investigation</u>

The Defendant asserts that the handwritten notes of the officers and agents are "necessary because the police reports are incomplete and inaccurate." Mot. Compel at 9, ECF No. 50. Defense counsel believed that said notes "also contain exculpatory and impeachment evidence" which may

be "necessary to a challenge to the warrants and grand jury indictment."

As an example of an inaccuracy in the reports, the Defendant noted that DEA Special Agent Jason Correa's initial report prepared on August 31, 2020, identified the Defendant as being "an Asian Pacific Islander male wearing a *gray* shirt and *tan* shorts" who was observed stopping by the mailbox to pick up the package in question. *Id.* at 10 (no emphasis in original). However, a subsequent report prepared by Agent Correa on October 28, 2020, noted that his initial report needed correction because the Defendant "was not observed wearing a *gray* shirt [but] he was observed wearing a *turquoise* shirt." *Id.* (no emphasis in original).

Another report prepared by Task Force Officer ("TFO") Henry James on October 25, 2020, made reference to the fact that Agent Correa's August 31, 2020 initial report was being corrected as noted above. The Defendant questioned the timing of these supposed "corrections," which were created only after defense counsel began requesting additional reports, chain of custody records and missing reports and evidence. *See* Reply at 3, ECF No. 58.

The Defendant asserted that these reports "raise more questions than answers" and "support . . . [d]efense's theory that the records are both inaccurate and incomplete." *Id.* at 11. The Defendant asserted that "[t]he notes of the officers involved with the surveillance will greatly assist in determining if there are additional holes or inconsistencies in the recollections of the investigating officers and whether these inaccuracies made their way into search warrant application or Grand Jury testimony." *Id.*

The United States recognized its obligations under *Brady*, *Giglio* and Rule 16 to disclose materials in its possession,[5] and the government asserted that it had turned over all handwritten notes in its possession to the Defendant. Opp'n at 10, ECF No. 56.

The Defendant contended that the records produced thus far indicated that several officers and agents were assigned to one of the surveillance units, but none of their notes from the

---

[5] The United States acknowledged that another agency's documents "are in the prosecution's possession, custody or control if the agency is part of the U.S. Attorney's Office's investigation or if the U.S. Attorney's Office 'otherwise has knowledge of and access to that material.'" Opp'n at 10, ECF No. 56 (quoting *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007) (Graber concurrence in denial of *en banc* rehearing)).

surveillance have been produced.[6] Mot. Compel at 11, ECF No. 50. The Defendant asserted that many of these same officers either did not write reports at all or any reports they wrote have not yet been produced. *Id.*

The Defendant cited to and relied upon the case of *United States v Harris*, 543 F.2d 1247 (9th Cir. 1976), which dealt with the issue of whether the destruction of interview notes made by the FBI agent in an interview with a defendant violates the Jencks Act and/or Rule 16 of the Federal Rules of Criminal Procedure. In that case, the FBI agent interviewed the defendant and took rough notes at the interview. *Id.* at 1248-49. The agent's notes were then incorporated into a more complete report of the interview, and then the agent discarded his rough notes pursuant to FBI policy. *Id.* at 1249. At trial, the defendant objected to the destruction of the notes and moved to strike the testimony of the agent, arguing that the government failed to comply with the Jencks Act when it failed to produce the agent's rough notes. *Id.*

While recognizing that "the FBI practice of destroying rough interview notes has generally been sanctioned by the courts in cases involving Jencks Act issues," the Ninth Circuit acknowledged "the danger inherent in permitting the routine destruction of original notes[.]" *Id.* at 1251. "It may be that the agent . . . who adapts a final report from preliminary memoranda will tailor his observations to fit his conclusions . . . ." *Id.* (quoting *United States v. Carrosco*, 537 F.2d 372 (9th Cir. 1976)). The Ninth Circuit also adopted the D.C. Circuit's holding in the *United States v. Harrison*, 524 F.2d 421 (D.C. Cir. 1975), that "[t]he courts, not the investigators nor the prosecutors, make the decision as to whether evidence is discoverable, and that decision cannot be made if the evidence has been destroyed." *Id.* at 428. The Ninth Circuit thus held that "the original interview notes, especially relating to an FBI's agents interview with the accused, must be preserved." *Harris*, 543 F.2d at 1253.

There is no real dispute between the parties as to the government's obligation to produce the rough notes of those agents and officers involved in the surveillance and investigation. The United

---

[6] The motion specially names TFO Henry James, TFO David Elliot, Special Agent Willie Hayes, HSI Special Agent Erwin Fejeran and TFO Jon Calvo as being involved in the surveillance. Mot. Compel at 11, ECF No. 50.

States maintains it has already provided all rough notes in its possession and asserts it has no objection to this request. Accordingly, the court grants the Motion to Compel as to the request to compel the production of the agents' handwritten, rough or field notes. To the extent there any other rough notes by the agents involved in this investigation that have not been turned over and are in the United States' possession, the court orders the government to promptly produce them. The court notes that Rule 16 imposes on the government and the Defendant a continuing duty to promptly disclose additional evidence or materials it may discover before or during trial. *See* Fed. R. Crim. P. 16(c).

> 2. <u>Copies of policies of procedures relating to drafting reports, drafting records, and otherwise preserving surveillance efforts and actions taken during the investigation and arrest of a suspect from all agencies involved in this investigation</u>

The Defendant next argued that the court should order the government to produce, from all agencies involved in this investigation, copies of policies of procedures relating to drafting reports, drafting records and otherwise preserving surveillance efforts and actions during the investigation and arrest of a suspect. The Defendant asserted this is necessary because of other inconsistencies noted in the reports produced to date. An example of an inconsistency raised by the Defendant was where Special Agent Correa's report identified TFO Jon Calvo as the officer who arrested the Defendant, but several pages later in the report, Special Agent Correa stated that HSI Special Agent Erwin Fejeran was the one who placed handcuffs on the Defendant. Yet, the Defendant noted that the government has not produced the reports or rough notes of either TFO Calvo or HSI SA Fejeran. The Defendant argued that in order to

> determine whether the officers here acted in bad faith in failing to produce exculpatory evidence until after the defense specifically requested [it] . . ., it is essential to know what is expected of the agents and officers during the course of an investigation. If the policies require that agents take and preserve notes, yet the agents failed to do so in violation of those policies, this would certainly be impeachment evidence and perhaps evidence of bad faith. At worst, it could show an active attempt to hide exculpatory or impeachment evidence simply by declining to document what actually occurred in violation of office policy.

Reply at 2-3, ECF No. 58.

The United States opposed the motion insofar as it sought the production of the DEA

Agent's Field Manual, as well as the manual of USPIS, GPD and HSI. The government asserted that production of the field manuals

> will create an unacceptable risk that the information contained therein will be disseminated, revealing tactics and potentially endangering agents and confidential sources in the field. . . . If the DEA Agent's Field Manual (and other agencies' manuals) became public, drug traffickers would learn investigative tactics and techniques used by the DEA. Knowledge of techniques would enable drug traffickers to determine whether their customers and associates are DEA confidential sources or undercover agents and the disclosure could, in effect, reveal the DEA's "game plan," permitting drug traffickers to frustrate investigations.

Opp'n at 11, ECF No. 56.

Pursuant to Rule 16(a)(1)(E), the government "must permit a defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense, . . . .". Fed. R. Crim. P. 16(a)(1)(E)(i). However, the Ninth Circuit has explained the meaning of "material" within the meaning of former Rule 16(a)(1)(C), now Rule 16(a)(1)(E) as follows:

> In *United States v. Armstrong*, 517 U.S. 456 (1996), the Supreme Court considered the parameters of Fed. R. Crim. P. 16(a)(1)(C) and ruled that defendants are entitled to the discovery of only those materials that are relevant to the defendant's response to the Government's case in chief:
>
>> While it might be argued that as a general matter, the concept of a "defense" includes any claim that is a "sword," challenging the prosecution's conduct of the case, the term may encompass only the narrower class of "shield" claims, which refute the Government's arguments that the defendant committed the crime charged. Rule 16(a)(1)(C) tends to support the "shield-only" reading. If "defense" means an argument in response to the prosecution's case in chief, there is a perceptible symmetry between documents "material to the preparation of the defendant's defense," and, in the very next phrase, documents "intended for use by the government as evidence in chief at the trial."
>
> I*d*. at 462. Under *Armstrong*, the [defendants] are entitled to the discovery of only those materials relevant to the charges [against them].

*United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000).

As argued by the government, here there simply has been no sufficient showing that the manuals or policies of procedures is "material" within the meaning of Rule 16(a)(1)(E). Beyond defense counsel's conclusory assertion that these documents will help to cross-examine agents

involved in the surveillance and investigation, this is not enough. *See United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984) ("Materiality is not established by a general description of the documents sought or by a conclusory argument that the requested information was material to the defense. . . . Upon careful review of appellants' request for internal government documents in this case, we find that appellants' request was inadequate to meet the requirements of Rule 16(a)(1)(C).") These manuals or policies do not serve the purpose of fortifying the Defendant's "shield claims" and will not refute the government's argument that the defendant committed the crimes charged. At best, any manual or policy is tangential to the issue of whether the Defendant committed the offenses charged in the Indictment. Because they are not "material" as that term is defined by *Armstrong* and *Chon*, the court denies the Motion to Compel as to the production of manuals and policies of procedures.

        3.   <u>Missing reports on all areas of the investigation</u>

Defendant asserted that the clue spray report is missing and that the government has not turned over any reports prepared by other officers and agents involved in the surveillance and investigation, such as TFO Jon Calvo or HSI Special Agent Erwin Fejeran. Defense counsel argued that these missing reports further support her request for production of the policies of procedures.

The United States asserted that it turned over a 13-page report that contained the result of the clue spray examination as well as information on the detention of the Defendant and his subsequent audio interview. Opp'n at 13, ECF No. 56. At the hearing, the United States asserted it turned over all reports in its possession and confirmed that not all officers or agents wrote reports.

Defense counsel appears to suggest that the court order all agents involved in the investigation to prepare written reports detailing their role in the investigation and their observations during the surveillance of the package and the Defendant, to the extent that they have not already done so, and to turn said reports over to the Defendant. The Defendant has failed to produce any authority that grants the court the ability to order such production. As noted at oral argument, Rule 16(a)(1)(E) only requires the production or inspection of "documents and objects." Fed. R. Crim. P. 16(a)(1)(E). Nothing in the rule authorizes the court to order the production of a report that never existed in the first place.

Similar to the Defendant's request for rough notes, the court orders the government to promptly produce any reports by the officers and agents involved in this investigation to the extent that they have not yet been disclosed to the Defendant.

4. <u>*Brady, Giglio*, and *Henthorn* materials of all government witnesses and law enforcement</u>[7]

The government stated that it "made inquiries regarding the law enforcement officers involved in this case[,]" and has found "no material to disclose to the Defendant." Opp'n at 13, ECF No. 56. At the hearing, the government acknowledged its responsibility to search for and produce this evidence, but found no such information to disclose.

Since the United States does not object to the production of this information to the extent that such information exists, the court grants the Motion to Compel with regard to this category of information. The court expects the United States to abide by its continuing obligation to disclose *Brady, Giglio, Henthorn* and/or Fed. R. Crim. P. 16 information that my subsequently come into the possession of the United States or other agencies involved in this prosecution of the Defendant.

5. <u>Any and all materials, reports, surveillance, witness statements, and confidential informant statements, relating to the investigation of any other individual or individual(s), including Ricky's family, suspected in this investigation</u>

The Defendant asserted that the reports produced thus far and discussions with the agents and prosecutor appear to reveal another possible target of the investigation, including possibly the Defendant's brother. *See* Mot. Compel at 16, ECF No. 50. The Defendant argued that evidence of investigations into other possible subjects could lead to exculpatory evidence, *id.* at 17, and thus requested that such information be produced.

The Government stated that it provided all reports to the Defendant, including all search warrant information. Opp'n at 13, ECF No. 56. As for other suspects, the United States asserted that it was the Defendant who "received the package, set off the breaching device, and burned the packaging material. The Defendant is the primary target of the investigation." *Id.* At the hearing,

---

[7] The Defendant's Reply brief did not provide specific argument as to this category of requested discovery.

counsel for the United States confirmed that there were no other suspects and that she would immediately disclose such information if it were known.

The United States generally had no objection to this requested category of information. Accordingly, the court grants the Motion to Compel with regard to category 5 and orders the government to promptly produce such reports to the extent that they exist and have not already been disclosed to the Defendant.

6. <u>All licenses and necessary certifications on the Celebrite or other software used to image or review phones seized during the investigation</u>[8]

At the hearing, defense counsel stated that she received the curriculum vitae of Nicholas Wellein after she filed the Motion to Compel. Defense counsel inquired, however, whether Mr. Wellein was using the most current software available.

The United States' Opposition stated that it already provided the Defendant with "the reports of U.S. Coast Guard/Forensic Examiner Nicholas Wellein, his Mobile Device Pre-Exam and Acquisition Form, notes, certification, and Curriculum Vitae." Opp'n at 15, ECF No. 56. At the hearing, government reiterated that all documents were provided to the Defendant and that Mr. Wellein's notes contained all the pertinent information sought by defense counsel.

Without objection from the government, the court grants the Motion to Compel with regard to this category of information and orders the United States to disclose the information, to the extent it has not already done so.

7. <u>All chain of custody documents and evidence logs from all evidence collected during the investigation</u>

The Defendant contended that there are missing chain of custody documents and asserts that while "[s]everal of the law enforcement reports have sections detailing handling of evidence, . . . none contain the actual chain of custody[]" receipt or log. Mot. Compel at 17, ECF No. 50. Defense counsel argues that this information is important "because yet another correction has been made to

---

[8] Except to list this category on page 5, the Defendant's Reply brief did not provide specific argument as to this category of requested discovery. *See* Reply, ECF No. 58.

the initial reports, but this time about the chain of custody. This correction came again after [Defendant] propounded his 1st Supplemental Discovery Request in October 2020." *Id.* at 18.

The United States asserted that it "provided all chain of custody information in its possession regarding these exhibits" to the Defendant and that "further chain of custody information was received from the USPIS Inspector on March 8, 2021," and was provided to the Defendant that same day." Opp'n at 15, ECF No. 56. At the hearing, government counsel stated that chain of custody information was contained in "DEA 6s," which were served on the Defendant in December 2020.

Defense counsel maintained that the documents produced thus far reveal that there are "significant chunks of the chain" missing. She acknowledged, however, that chain of custody information dealt more with the weight of the evidence versus its admissibility, and so this would be a matter to raise at trial.

Since the United States does not object to this request for discovery, the court grants the Motion to Compel with regard to this category of information. The court orders the United States to promptly produce all chain of custody documents and evidence logs, to the extent that such documents have not already been provided to the Defendant.

## CONCLUSION

Based on the above discussion, the court grants in part the Defendant's Motion to Compel with regard to categories 1 and 3-7 as set forth in footnote 1. The court also denies in part the Motion to Compel as it relates to category 2 which seeks the production of manuals and policies of procedures. To the extent not otherwise provided in the line-item rulings on specific requests for discovery set forth above, any requests for further discovery set forth in the Defendant's Motion to Compel is denied as moot.

The court reminds the United States to abide by its continuing duty to disclose *Brady, Giglio, Henthorn* and/or Fed. R. Crim. P. 16(c) information that may subsequently come into the possession of the United States or other agencies involved in this prosecution of the Defendant. Additionally, the United States' disclosure obligation extends to "non-federal personnel whose work contribute[d] to [the investigation or prosecution of this] federal criminal case." *United States v. Fort*, 472 F.2d, 1106, 1113 and 1115 (9th Cir. 2007).

United States v. Ricky James Jr. Salas Santos, Criminal Case No. 20-00021
Order Granting in Part and Denying in Part Defendant's Motion to Compel Discovery    page 13 of 13

Failure to comply with this Order or Rule 16 may result in the prohibition of the use of the undisclosed evidence at trial or the entry of any other order that is just under the circumstances, including the imposition of sanctions. *See* Fed R. Crim. P. 16(d)(2)(C) and (D).

IT IS SO ORDERED.



/s/ Michael J. Bordallo
   U.S. Magistrate Judge
Dated: Jul 06, 2021