SHAWN N. ANDERSON
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICKY JAMES JR. SALAS SANTOS,<br><br>Defendant. | CRIMINAL CASE NO. 20-00021<br><br>**UNITED STATES' AMENDED TRIAL BRIEF**<br><br>**Trial: August 10, 2021– 10:00 AM**<br>**Judge: Frances Tydingco-Gatewood**<br>**Chief Judge** |

UNITED STATES' TRIAL BRIEF - 1

# TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………….       8

II.     CASE POSTURE………………………………………………...       8

III.    PRETRIAL MOTIONS……………………………………………       8

IV.     FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL………….       9

V.      CHARGES AND RELATED ISSUES……………………………….       11

        A.   Attempted Possession with Intent to Distribute Methamphetamine
             Hydrochloride……………………………………………       11

        B.   Possession with Intent to Distribute Methamphetamine Hydrochloride….      12

        C.   Notice of Forfeiture……………………………………….       13

VI.     ANTICIPATED EVIDENCE….………………………………….       13

        A.  Benjamin Whitsett, Postal Inspector, U.S. Postal Inspection Service ……..       13

        B.  Jonathan Calvo, Task Force Officer, U.S. Postal Inspection Services……..       14

        C.  Henry James, Task Force Officer, Drug Enforcement Administration…….       14

        D.  Jason Correa, Special Agent, Drug Enforcement Administration………….       15

        E.  Shawn Ayuyu, Task Force Officer, Drug Enforcement Administration……       15

        F.  Ashley Bennett, Chemist, Drug Enforcement Administration……………...       15

VII.    EVIDENTIARY AND OTHER TRIAL ISSUES………………………….       15

        A.  Statements……………………..……………………………       15

        B.  Photographs……………………………………….…..………       16

        C.  Duplicates……………………………………………………..       16

        D.  Chain of Custody……………………………………………….       17

        E.  Prima Facie Threshold for Authentication ………………………….       18

        F.  Foundation for Still Photographs/Video Recordings …………………..       20

UNITED STATES' TRIAL BRIEF - 2

G. Opinion Evidence, Expert Witness…………………………………………… 20

H. Statement of Non-Testifying Agents ……………………………………… 21

I. Witness Impeachment by Prior Bad Acts ………………………………… 23

J. Unrelated Instances of Non-Criminal Conduct ……………………………… 24

K. Explanation of Investigation …………………………………………… 24

L. Inextricably Intertwined Evidence ……………………………………… 24

M. Stipulations ……………………………………………………… 25

N. Arguing Penalties…………………………………………………… 25

VIII.    CONCLUSION…………………………………………………… 27

**TABLE OF AUTHORITIES**

**Cases**

*Apprendi v. New Jersey,* 120 S. Ct. 2348 (2000) ……………………………………………12

*Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971)……………………………25

*Crawford v. Washington,* 541 U.S. 36 (2004) …………………………………………… 23

*Cox v. United States*, 447 U.S. 908 (1980) …………………………………………………16

*Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993)………………………………21

*Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960) …………………………17

*General Electric v. Joiner*, 118 S.Ct. 512, 522……………………………………………… 22

*Gretter v. United States*, 422 F.2d 315, 319 (10th Cir. 1970)……………………………...26

*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3rd Cir. 1994) ………...21

*In re TMI Litig.*, 193 F.3d 613, 664 (3rd Cir. 1999) …………………………………....21

*In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 155 (3rd Cir.1999)…………………………22

*Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir.1999)…………………………………… 22

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 141 …………………………………… 21

*Libretti v. United States,* 516 U.S. 29, 39 (1995) ………………………………………….. 12

*May v. United States*, 175 F.2d 994, 1010 (D.C. Cir. 1949) ……………………………… 26

*People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985) ………………………16

*Phiropoulous v. State*, 908 S.W. 3d 712, 714 (Mo.App.E.D. 1995) ………………………20

*Pope v. United States*, 298 F.2d 507 (5th Cir. 1962) ……………………………………… 26

*Rogers v. Ingersoll-Rand Co.*, 971 F.Supp. 4 (D.D.C. 1997) ……………………………...20

*Shannon v. United States*, 512 U.S. 573, 579 (1994) ………………………………………25

*Simms v. Dixon*, 291 A.2d 184, 186 (D.C. App. 1972) ……………………………………20

*Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir.1999).... 21

*State v. Powers*, 148 S.W. 3d 830, 832 (Mo.App.E.D. 1995) ……………………………… 20

*Suthterland v. Koster*, 2011 WL 2784108 (E.D.Mo., 2011) ……………………………… 20

*Wilson v. Woods*, 163 F.3d 935 (5th Cir.1999)………………………………………………….22

*United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992) …………………………… .24

*United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) …………………………… .24

*United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002) ………………….…… 24

*United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) …………………………… .18

*United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) …………………………….16

*United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) ………………………..16

*United States v. Chischilly*, 30 F.3d 1144, 1156 (9th Cir.1994)………………………….. 22

*United States v. Clark*, 986 F.2d 65, 68 (4th Cir. 1993) ………………………………… ..20

*United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) …………………………… 25

*United States v. Cook*, 776 F. Supp. 755, 756-57 (S.D.N.Y. 1991)………………………. 26

*United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) ……………………………24

*United States v. Dare*, 425 F.3d 634, 642 (9th Cir.2005) ……………………………….13

*United States v. Davis*, 183 F.3d 321, 357 n.12 (3d Cir. 1999) …………………………...23

*United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970)……………………………. 25

*United States v. Feuer*, 403 F. App'x 538, 540 (2d Cir. 2010)……………………………25

*United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) ………………………...16

*United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980) ………………………..17

*United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002) ………………………........23

*United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) ………………………………...22

UNITED STATES' TRIAL BRIEF - 5

1    *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ……………………………24

2    *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) …………………………………..21

3    *United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991) ……………………………...17

4    *United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ……………………… ..24

5    *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976) ………………………........25

6    *United States v. Lowe*, 767 F.2d 1052, 1063-64 (4th Cir. 1985) …………………….....24

7    *United States v. Marin*, 669 F.2d 73, 84 (2nd Cir. 1982)…………………………………16

8    *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990) ……………………. ......24

9    *United States v. Matta-Ballesteros*, 71 F.3d 754 (9th Cir. 1995) ……………………….....18

10    *United States v. Myers*, 21 F.3d 826 (8th Cir. 1994) …………………………………… 13

11    *United States v. Pabon-Cruz*, 391 F.3d 86 (2d Cir. 2004)…………………………………. 26

12    *United States v. Pelullo,* 14 F.3d 881, 904 (3rd Cir. 1994)……………………………….....12

13    *United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) …………………………….24

14    *United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971)………………………….26

15    *United States v. Ramsey*, 165 F.3d 980, 984 (D.C.Cir.1999)……………………………... ..22

16    *United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994) …………………………….....20

17    *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) …………………………..24

18    *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir.1992)……………………………13

19    *United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012) …………………………………… 17

20    *United States v. Standish*, 3 F.3d 1207, 1210 (8th Cir. 1993) ……………………………..20

21    *United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005) ……………………… 16

22    *United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010) …………………………….24

23    *United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996)……………………………………… 13

24

UNITED STATES' TRIAL BRIEF - **6**

*United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir.1971)……………………………..26

*United States v. Young*, 470 U.S. 1, 13 (1985)…………………………………………… 26

**Statutes**

18 U.S.C. § 853 …………………………………………………………8

21 U.S.C. § 841(a)(1); (b)(1)(A)(viii)……………………………..…………..11

21 U.S.C. § 846 …………………………………………………………11

**Rules**

Fed. Rule Evid. § 104 ………………………………………………… ...22

Fed. Rule Evid. § 403 …………………………………………………22

Fed. Rule Evid. § 404 ………………………………………………… 8

Fed. Rule Evid. § 608 …………………………………………………23

Fed. Rule Evid. § 702 …………………………………………………21

Fed. Rule Evid. § 703 …………………………………………………21

Fed. Rule Evid. § 801 …………………………………………………15

Fed. Rule Evid.§ 803 …………………………………………………22

Fed. Rule Evid. § 901 …………………………………………………16

Fed. Rule Evid. § 902 …………………………………………………8

Fed. Rule Evid. § 1001 …………………………………………………20

Fed. Rule Evid. § 1003…………………………………………………… ..16

**Others**

Ninth Circuit Manuel of Model Criminal Jury Instruction No. 4.14 …..………………… 21

Ninth Circuit Manuel of Model Criminal Jury Instruction No. 9.17 …..……………….11

Ninth Circuit Manuel of Model Criminal Jury Instruction No. 9.15 …… ……………...…11

## I. __Introduction__

The United States submits this amended trial brief in compliance with the Court's Third Amended Trial Scheduling Order entered on July 6, 2021. *See* ECF No. 88. This case is set for jury trial on August 10, 2021. The Government's trial brief sets forth the basic facts the Government intends to prove at trial and anticipated legal and evidentiary issues that may arise at trial.

## II. __Case Posture__

The grand jury returned a True Bill on September 9, 2020, charging Defendant RICKY JAMES JR. SALAS SANTOS ("SANTOS") with the offenses of Attempted Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii); Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). The Indictment contains a Notice of Forfeiture, in violation of 21 U.S.C. § 853.

## III. __Pretrial Motions__

Defense filed a Motion to Compel Discovery and Brief in Support has been filed by defense. *See* ECF No. 50. The Government filed a United States' Response to Motion to Compel Discovery. *See* ECF No. 56. The Defendant filed a Reply Re: Motion to Compel Discovery. *See* ECF No. 58. A hearing was scheduled for Thursday, April 15, 2021, before the Hon. Michael J. Bordallo, U.S. Magistrate Judge. *See* ECF No. 62. On July 6, 2021, the Magistrate Judge issued an Order Granting in Part and Denying in Part Defendant's Motion to Compel Discovery. *See* ECF 87.

The Government has filed a United States' Notice of Intent to Move for Admission of §404(b) Acts (*See* ECF 57), and an Amended Notice of Intent to Move for Admission of §404(b)

UNITED STATES' TRIAL BRIEF - 8

Acts (*See* ECF 59). The Government filed a United States' Submission Re: Jury Nullification. *See* ECF 16. The Government filed a United States' Notice of Intent to Move to Admit Self-Authenticating Evidence Pursuant to the Federal Rules of Evidence §902(14). *See* ECF No. 52. The Government filed a Notice of Intent to Use Expert Testimony regarding expert Ashley L. Bennett, Drug Enforcement Administration, Sr. Forensic Chemist, Southwest Laboratory. *See* ECF No. 51. The United States' Witness List was filed. *See* ECF No. 54. The United States' also filed Proposed Jury Instructions. *See* ECF No. 64.

## IV. <u>Facts the Government Intends to Prove at trial</u>

### *Salas Package – July 13, 2020*

On July 13, 2020, United States Postal Inspector Preston Ellis seized a package addressed to:

> Shane Salas
> 118 Abangbang Loop
> Yigo, Guam 96929

The Court issued a Search and Seizure Warrant (MJ 20-00069) on July 13, 2020. The package contained **455** gross grams of methamphetamine.

### *Salas Package – August 24, 2020*

On August 24, 2020, United States Postal Inspector Benjamin Whitsitt seized a package addressed to:

> Shane Salas
> 118 Abangbang Loop
> Yigo, Guam 96929

The customs form read that the package contained an "Ugly Doll" toy kit. Postal Inspector Whitsitt obtained a search warrant (MJ 20-00087), to search the package. The package contained tool kits, candy, and glow sticks. The package also contained 15 vacuum sealed packages containing a crystalline substance. The crystalline substance weighed **499.5** gross grams and was tested resulting in a positive for the presence of methamphetamine. The net

UNITED STATES' TRIAL BRIEF - 9

weight of the drug was **470** grams.

Postal Inspector Whitsitt obtained a tracking warrant (MJ 20-00088), removed the crystalline substance and replaced it with a sham product and a breaching and GPS device. Postal Inspector Whitsitt obtained an Anticipatory Warrant (MJ 20-00089) for 118 Abangang Loop, Yigo, Guam 96929.

***Delivery of the Salas Package***

On or about August 26, 2020, law enforcement conducted a controlled delivery of the Salas package placing it in the mail cluster box for the Abangbang area. At approximately 4:30 p.m., Ricky James Jr. Salas Santos ("Defendant") picked up the package, placed it into his vehicle and drove heading towards the 118 Abangbang, Yigo residence. Defendant drove his vehicle to the 118 Abangbang, Yigo residence, left the residence, drove around the neighborhood and returned again to the residence. At approximately 4:45 p.m., the breaching device alerted. Law enforcement officers approached the residence encountering the Defendant who was trying to leave.

Law enforcement searched the Defendant's residence and found the contents of the package (MJ 20-00087) laying on the Defendant's bed as well as **1,191** grams of methamphetamine concealed in a dog food bag. Law enforcement also seized three cell phones.

Postal Inspector Whitsitt obtained search warrants MJ 20-00095 (White Apple iPhone), MJ 20-00096 (Black Samsung Cellular Telephone) and MJ 20-00097 (Nokia Cell phone) to search the Defendant's electronic devices.

***Salas 2 Package – August 27, 2020***

On August 27, 2020, United States Postal Inspector Benjamin Whitsitt seized another package addressed to:

Shane Salas

UNITED STATES' TRIAL BRIEF - 10

118 Abangbang Loop
Yigo, Guam  96929

Postal Inspector Whitsitt obtained a search warrant (MJ 20-00090) to search the package. The package contained a box wrapped in "Happy Birthday" wrapping paper.  In the package was a white bucket which contained two vacuum sealed bags containing a crystalline substance wrapped in carbon paper.  The vacuum sealed bags contained a crystal-like substance suspected to be methamphetamine which weighed **2.328** kilograms gross or **2,257** net grams.

## V.  Charges and Related Issues

Defendant is charged with Attempted Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846,  841(a)(1) and (b)(1)(A)(viii) and Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and Notice of Forfeiture, in violation of 21 U.S.C. § 853.

### A.  Attempted Possession with Intent to Distribute Methamphetamine Hydrochloride

Attempted Possession with Intent to Distribute Methamphetamine Hydrochloride is a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) and 846.  The elements of the offense are:

First:    First, defendant intended to possess methamphetamine hydrochloride with the intent to distribute it to another person; and

Second:   The defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

Source:  Ninth Circuit Pattern Criminal Jury Instruction 9.17 (Updated 9/2020)

### B.  Possession With Intent to Distribute Methamphetamine Hydrochloride

Possession with Intent to Distribute Methamphetamine Hydrochloride is a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).  The elements of the offense are:

UNITED STATES' TRIAL BRIEF - 11

| | |
|---|---|
| First: | The defendant knowingly possessed methamphetamine hydrochloride; and |
| Second: | The defendant possessed it with the intent to distribute it to another person. |

Source:  Ninth Circuit Pattern Criminal Jury Instruction 9.15 (Updated 9/2020)

### C. <u>Forfeiture</u>

The Indictment contains a Notice of Forfeiture  pursuant to Title 18, United States Code, Section 853 giving the defendant notice of the Government's intent to seek forfeiture of various properties used or intended to be used to commit, to facilitate, or to promote the commission of such offense; and constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as  a result of the offense.   Entry of an order of forfeiture in a criminal case is considered part of sentencing. *Libretti v. United States,* 516 U.S. 29, 39 (1995).  Nevertheless, the factual determination as to whether any property was involved or derived from an offense is a matter submitted to the jury. *United States v. Pelullo,* 14 F.3d 881, 904 (3rd Cir. 1994). [1]

The only issue for the jury is whether the Government "has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(4).  The jury itself does not order forfeiture; nor does it consider third-party claims. Fed. R. Crim. P. 32.2(b), (c).  In this regard, the Government will submit proposed jury instructions and a special verdict form. The jury's special verdict will serve as the basis for this Court to enter a preliminary order of forfeiture.  Fed. R. Crim. P. 32.2(b)(2), (3).  The final order of forfeiture will follow notice and advertisement of the preliminary order and will address any third-party claims.  Fed.

---

[1]  Fed. R. Crim. P 32.2(b), which became effective December, 2000, provides that this factual determination shall be made by the court unless a party requests that the jury determine whether the government has established the requisite nexus between the property and the offense. In an abundance of caution, in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), the government requests that the Court submit the forfeiture issue to the jury unless the defendant waives any right that he might have to a jury trial on forfeiture. The government does not concede that *Apprendi* should be read to require a jury determination on criminal forfeiture and, indeed, would argue that *Libretti* has held to the contrary. The government nevertheless suggests that, absent defendant agreement, forfeiture be submitted to the jury until this issue is resolved in this Circuit.

R. Crim. P. 32.2(b)(2), (c).

The jury does not consider whether the Defendant has an interest in the property to be forfeited; nor does the jury determine the extent of the Defendant's interest in any property to be forfeited. These matters are considered by the Court in ancillary proceedings, following the jury's special verdict and entry of the preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b), (c); Advisory Committee Note to Subsection (b). As a sentencing issue, the burden of proof is by a preponderance of the evidence. *See United States v. Dare*, 425 F.3d 634, 642 (9th Cir.2005) ("[T]he preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing.); *United States v. Myers*, 21 F.3d 826 (8th Cir. 1994) (preponderance standard applies because forfeiture is part of sentence in money laundering cases); *United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996) (following *Myers*); *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir.1992)(same for drug cases). Accordingly, the Government requests that the Court instruct the jury on preponderance of the evidence standard if and when the issue of forfeiture is submitted to them for decision. The Government will submit pertinent instructions on this issue prior to the forfeiture stage of this proceeding.

## VI. Anticipated Evidence

What follows is a brief summary of the testimony of the witnesses the Government intends to call at trial. This list is not exhaustive.

### A. Benjamin Whitsitt

Benjamin Whitsitt is a Postal Inspector (PI) with the United States Postal Inspection Service ("USPIS"). PI Whitsitt will testify to the seizure of the Salas package on August 24, 2020, the search warrant (MJ 20-0087), and the contents discovered within the Salas package. PI Whitsitt will testify to the steps in the investigation, including the facts pertaining to the tracking

and anticipatory warrants (MJ 20-00088, MJ 20-00089). PI Whitsitt will provide testimony that on or about August 26, 2020, the Defendant picked up the Salas package, drove around the neighborhood area before returning to 118 Abangbang Loop, Yigo, Guam 96929. PI Whitsitt will testify that he saw Defendant exit 118 Abangbang Loop, Yigo and burn objects (package) in a metal barrel. PI Whitsitt will testify regarding his interview of the Defendant.

PI Whitsitt will also lay the foundation for admission of photographs of the package, the package's contents, the Defendant's residence 118 Abanbang Loop, Yigo as well as for items seized from the Defendant.

PI Whitsitt will also testify that another package addressed to Shane Salas, 118 Ababang Loop, Yigo, Guam arrived on or about August 26, 2020. PI Whitsitt obtained a search warrant (MJ 20-00090) to search the package. The package contained a box wrapped in "Happy Birthday" wrapping paper. This package contained a white bucket with two vacuum sealed bags containing a crystalline substance wrapped in carbon paper. The crystal-like substance is methamphetamine and weighed 2.328 kilograms gross or 2,257 net grams.

**B. Jonathan Calvo**

Jonathan Calvo is a Task Force Officer (TFO) with the USPIS. TFO Calvo will testify that he applied clue spray on the contents of the Salas package. TFO Calvo will testify that he placed the Salas package in a cluster box located across the street from 118 Abanbang Loop, Yigo, Guam. On August 26, 2020, TFO Calvo approached Defendant and initiated a black light test. TFO Calvo will testify to the location of the black light test, the negative result, and his observations of the Defendant.

**C. Henry James**

Henry James is a Task Force Officer (TFO) with the Drug Enforcement Administration

(DEA).  TFO James observed the Defendant drive a Toyota Tacoma pickup to the cluster box, and enter his truck while holding the Salas package.  TFO James will testify to his observations and findings within the residence.

### D. Jason Correa

Jason Correa is a Special Agent (SA) with DEA.   SA Correa discovered that the breacher device in the Salas package was activated and signaled for entry into the Defendant's residence.  SA Correa interviewed the Defendant and will provide testimony regarding that interview.

### E. Shawn Ayuyu

Shawn Ayuyu is a Task Force Officer ("TFO") with the Drug Enforcement Administration.  TFO Ayuyu will testify to the items found in Defendant's residence.  TFO Ayuyu will further provide testimony regarding the contents of Defendant's cellular phones. (MJ 20-00095 White Apple iPhone 11 Cellular Telephone; MJ 20-00096 Black Samsung Cellular Telephone; MJ 20-0097 Nokia Cellular Telephone).  TFO Ayuyu will lay the foundation for admission of photographs taken in Defendant's residence and the items seized from his residence.

### F. Ashley Bennett

Ashley Bennett is a Forensic Chemist with the Drug Enforcement Administration Southwest Laboratory.   Chemist Bennett will testify regarding the identification of the methamphetamine hydrochloride and the purity levels of the drugs.

## VII.  Evidentiary and Other Trial Issues

### A.  Statements

The Government will offer Defendant's statements into evidence at trial.  Fed.R.Evid.

801(d)(2)(A).  The Government may move to admit excerpts of the Defendant's text messages in evidence pursuant to Fed.R.Evid. § 801(d)(2)(A), as an Opposing Party's Statement.  Pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, a defendant's out-of-court statement is not hearsay when offered by the Government. Fed. R. Evid. 801(d)(2)(A).  "A statement is not hearsay if ... [it] is offered against a party and is the party's own statement."  *United States v. Marin*, 669 F.2d 73, 84 (2nd Cir. 1982).  A defendant, however does not have a parallel ability to offer his/her own statements into evidence.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *Id.*

## B. Photographs

The Government intends to offer photographs into evidence.  Under Rule 901 of the Federal Rules of Evidence, a witness familiar with a scene or object may provide a sufficient foundation for admission of a photograph by testifying that it fairly and accurately depicts the scene or the object at the relevant time.  *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980); *cert. denied sub nom. Cox v. United States*, 447 U.S. 908 (1980).  *See also People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985).  0020"The evidence that the photographs accurately depicted events in the bank during the robbery was undisputed.  This evidence provided a sufficient foundation to admit the photographs." *United States v. Brannon*, 616 F.2d 413, 416-17 (9th Cir. 1980).

## C. Duplicates

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) the circumstances make it unfair to admit the duplicate instead of the original.  *See* Fed. R. Evid. 1003.  The party opposing admission on Rule 1003 grounds has the burden of producing evidence to trigger one of these exceptions.  *See*, *e.g.*,

*United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005); *see also United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (burden of challenging admissibility of duplicate rests with the party against whom it is offered); *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) (same); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

### D. <u>Chain of Custody</u>

The Government's position is that the chain of custody in this case is sufficient to introduce the seized items into evidence. The Ninth Circuit has held that the prosecution may establish chain of custody to lay a proper foundation for admission of physical evidence if it is able to prove that a reasonable juror could find that the evidence is in substantially the same condition as when seized and if there is a reasonable probability the evidence has not been changed in important aspects. Merely raising the possibility of tampering is not enough to render evidence inadmissible. Finally, a defect in the chain of custody goes to the weight not admissibility. *United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012); *United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991); *See generally* Fed. R. Evid. 901(a).

Before evidence is admitted, "the prosecution must introduce sufficient proof so that a reasonable juror could find that the items [that the prosecution seeks to admit into evidence] are in 'substantially the same condition' as when they were seized." *United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012) quoting *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). The district court may admit the evidence if there is a 'reasonable probability the article has not been changed in important respects.'" *Id*. (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). "Before a physical object connected with the connection of a crime may properly be admitted in evidence there must be a showing that such object is in substantially the same condition as when the crime was committed. This determination is to be made by the

trial judge.  Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it.  If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence."  *Gallego v. United States*, 276 F.2d 914 (9th Cir. 1960).

A defect in the chain of custody goes to the weight, not admissibility, of the evidence introduced.  *United States v. Matta-Ballesteros*, 71 F.3d 754 (9th Cir. 1995).  "The possibility of a break in the chain of custody goes only to the weight of the evidence."  *Id*. (quoting *United States v. Harrington*, 923 F.2d 1374 (9th Cir. 1991).

"There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence.  *Gallego*, 276 F.2d 914.

### E.  <u>Prima Facie Threshold for Authentication</u>

When proffered evidence is challenged on grounds of authenticity or identity, the evidence should be admitted once the government makes a prima facie showing of authenticity. See *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) ("[Rule 901] requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.  The credibility or probative force of the evidence offered is, ultimately, an issue for the jury.") (quotation marks and citation omitted).

In order to prove authenticity, there must be some evidence sufficient to support a finding that the evidence is what the proponent claims it to be.  Fed.R.Evid. § 901.

Federal Rules of Evidence § 902 states as follows:

**Rule 902. Evidence That Is Self-Authenticating**
The following items of evidence are self-authenticating; they require no extrinsic

UNITED STATES' TRIAL BRIEF - 18

evidence of authenticity in order to be admitted:

> (14) **Certified Data Copied from an Electronic Device, Storage Medium, or File.** Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11).

The reference to the "certification requirements of Rule 902(11) or (12)" is a process by which a proponent seeking to introduce electronic data into evidence must present a certification in the form of a written affidavit that would be sufficient to establish authenticity were that information provided by a witness at trial. This affidavit, provided by a "qualified person," is U.S. Coast Guard Special Agent and Computer Forensics Agent Nicholas P. Wellein, who collected the evidence and can attest to the requisite process of digital identification utilized.

In applying Fed. R. Evid. § 902(14), the accompanying Judicial Conference Advisory Committee notes provide guidance and insight concerning the intent of the law and how it should be applied. The second paragraph of committee note to Fed.R.Evid. § 902(14) states, in its entirety, as follows:

> Today, data copied from electronic devices, storage media, and electronic files are ordinarily authenticated by "hash value." A hash value is a number that is often represented as a sequence of characters and is produced by an algorithm based upon the digital contents of a drive, medium, or file. If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical. Thus, identical hash values for the original and copy reliably attest to the fact that they are exact duplicates. This amendment allows self-authentication by a certification of a qualified person that she checked the hash value of the proffered item and that it was identical to the original. The rule is flexible enough to allow certifications through processes other than comparison of hash value, including by other reliable means of identification provided by future technology.

The Advisory Committee notes further state that Rule § 902(14) is designed to streamline the admission of electronic evidence where its foundation is not at issue, while providing a notice procedure where "the parties can determine in advance of trial whether a real challenge to

authenticity will be made, and can then plan accordingly." This rule provides that properly certified electronic data is now afforded a strong presumption of authenticity, an opponent may still lodge an objection, but the opponent now has the burden to overcome that presumption.

### F. Foundation for Still Photographs/Video Recordings

Videotaped evidence is categorized as photographic evidence under Federal Rule of Evidence § 1001(c). "So long as the scenes or events depicted accurately represent what they are alleged to portray, there is no requirement that the individual who actually took the pictures testify at trial to lay a proper foundation. *Rogers v. Ingersoll-Rand Co.*, 971 F.Supp. 4 (D.D.C. 1997) citing *Simms v. Dixon*, 291 A.2d 184, 186 (D.C. App. 1972). "The same principles that govern the foundation for still photographs apply to the admission of motion pictures or videotapes. *State v. Powers*, 148 S.W. 3d 830, 832 (Mo.App.E.D. 1995). The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show. *Phiropoulous v. State*, 908 S.W. 3d 712, 714 (Mo.App.E.D. 1995). The foundation may be established by any witness who is familiar with the subject matter of the tape and is competent to testify from personal observation. Id." *Suthterland v. Koster*, 2011 WL 2784108 (E.D.Mo., 2011).

"Under federal law, a foundational objection to the admission of a videotape is without merit where testimony indicates that the tapes are 'fair and accurate.' *United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994). Strict compliance with guidelines for admission of videotapes is not required where a videotape's 'substance and circumstances under which it was obtained were sufficient proof of its reliability.' *Id*. at 733 n. 4 (citing *United States v. Clark*, 986 F.2d 65, 68 (4th Cir. 1993)). … Additionally, videotapes are admissible to show how a crime was committed and to link a defendant to a crime. *See e.g., United States v. Standish*, 3 F.3d 1207,

1210 (8th Cir. 1993)."   *Suttherland v. Koster*, 2011 WL 2784108 (E.D.Mo., 2011).

### G.  Opinion Evidence, Expert Witness

The United States proposes the following jury instruction be provided to the petite jury:

> You have heard testimony from a witness who testified to opinions and the reasons
> for her opinions. This opinion testimony is allowed because of the education or
> experience of this witness.  Such opinion testimony should be judged like any other
> testimony. You may accept it or reject it, and give it as much weight as you think it
> deserves, considering the witness's education and experience, the reasons given for
> the opinion, and all the other evidence in the case.

Ninth Circuit Model Criminal Jury Instructions, Instruction 4.14 (updated 9/2020).

Federal Rules of Evidence § 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or
> education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier
> of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[2]

In *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000), the Court noted that:

> The Daubert factors were not intended to be exhaustive nor to apply in every case.
> *Kumho Tire*, 119 S.Ct. at 1178. However, a trial court may consider the specific
> factors identified in Daubert where they are reasonable measures of the reliability of
> proffered expert testimony. *Skidmore v. Precision Printing and Packaging, Inc.*, 188

---

[2] Under Federal Rule of Evidence 703, in the case of scientific evidence, an expert can base his/her opinion on facts
or data "perceived by or made known to the expert at or before the hearing." Fed.R.Evid. 703.  "The trial judge
must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific
knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary
assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether
that reasoning or methodology properly can be applied to the facts in issue.  *Daubert*, 509 U.S. at 592-93.  This
gatekeeping role extends to all cases where the "testimony reflects scientific, technical, or other specialized
knowledge."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 141.Under *Daubert*, the Court must make a two-step
inquiry for scientific evidence:  "First of all, the proffered 'expert' must be qualified to express an expert opinion…
Secondly, the proffered expert opinion must be reliable."  *In re TMI Litig.*, 193 F.3d 613, 664 (3rd Cir. 1999).  In
determining the reliability of the expert testimony, the Supreme Court has provided a number of factors to offer
guidance to the court's inquiry.  These factors include:  (1)  whether a method consists of a testable hypothesis; (2)
whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and
maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6)
the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the
expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.
*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3rd Cir. 1994).

F.3d 606, 618 (5th Cir.1999) ("Whether Daubert 's suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. It is a fact-specific inquiry." (internal citations omitted)).

Likewise, in considering the admissibility of testimony based on some "other specialized knowledge," Rule 702 generally is construed liberally. *See*, *e.g.*, *United States v. Ramsey*, 165 F.3d 980, 984 (D.C. Cir.1999) (admission of opinion testimony, given by agent of Drug Enforcement Administration regarding drug trade was not plainly erroneous; while agent was not formally qualified as expert, agent described his qualifications, including his specialized knowledge, education, skill and experience, before giving testimony). Thus, admissibility of expert opinion testimony generally turns on the following preliminary question of law determinations by the trial judge under FRE 104(a).

Whether the opinion is based on scientific, technical, or other specialized knowledge; Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;

Whether the expert has appropriate qualifications -i.e., some special knowledge, skill, experience, training or education on that subject matter. FRE 702; *Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir.1999); *See Wilson v. Woods*, 163 F.3d 935 (5th Cir.1999) (expert in fire reconstruction unqualified as expert in auto accident reconstruction).

Whether the testimony is relevant and reliable. *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 155 (3rd Cir.1999); *Kumho Tire*, 119 S.Ct. at 1174–75.

Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury). *See General Electric v. Joiner*, 118 S.Ct. 512, 522.

Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. FRE 403; *United States v. Chischilly*, 30 F.3d 1144, 1156 (9th Cir.1994).

At trial, the United States will meet this burden by eliciting testimony from the proffered expert revealing the expert's level of education, experience, and on-the-job training, specialized knowledge, skill, experience, and training on the subject matter.

**H. Statements of Non-Testifying Agents**

During trial, Agents and Task Force Officers may testify about other Agents' and Task Force Officer's surveillance. Such testimony is admissible under the present-sense-impression

exception of Rule 803(1) of the Federal Rules of Evidence. *See*, *e.g., United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (testimony of agents who overheard observations of surveillance officers "easily satisfy the requirements" of Rule 803(1), as "[t]he surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception[.]"). This case-law survives *Crawford v. Washington,* 541 U.S. 36 (2004). *See United States v. Solorio*, 669 F.3d 943, 952-54 (9th Cir. 2012).

## I. Witness Impeachment by Prior Bad Acts

Rule 608 of the Federal Rules of Evidence governs the impeachment of witnesses based on specific instances of their conduct. It permits inquiry into specific instances of a witness's conduct for the purpose of attacking the witness's credibility only on cross examination of the witness or of another witness who has testified as to the principal witness's character for truthfulness, and only if the prior instance of conduct is "probative of truthfulness or untruthfulness." Fed. R. Evid. § 608(b).

Rule 608 also prohibits proof of specific instances of a witness's conduct by extrinsic evidence. Fed. R. Evid. § 608(b). Thus, even when Rule § 608(b) allows inquiry into a specific instance of conduct probative of truthfulness, such as making false statements, it does not permit inquiry into the consequences of that act, such as an arrest or other disciplinary action for conduct. *See id.*, advisory committee note ("[T]he extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act," listing suspension or other disciplinary action as an example); *see* also *United States v. Davis*, 183 F.3d 321, 357 n.12 (3d Cir. 1999) (stating that Rule 608 prohibits inquiry into a witness's suspension from work based on a prior bad act).

Finally, inquiry into specific acts of a witness's conduct is subject to the Court's discretion, and the court may prohibit such inquiry under Rule 403. *See*, *e.g.*, *United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002).

**J. Unrelated Instances of Non-Criminal Conduct**

Evidence that defendant obeys laws or otherwise comported himself or herself well on other occasions is inadmissible because it is not probative of whether he committed the crimes charged in this case. *See*, *e.g., United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) (affirming exclusion of evidence that defendants did not take bribes on certain occasions was inadmissible as irrelevant to whether they did take bribes on others); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) (affirming exclusion of evidence of specific, unrelated "good acts" as irrelevant to guilt); *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."). Evidence of a "lack of prior bad acts" amounts to inadmissible character evidence under Rule 405(a), which prohibits evidence of specific instances of conduct to prove character. *See United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *see also United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) (same).

**K. Explanation of Investigation**

An out-of-court statement is not hearsay when offered not for the truth but to explain how an investigation unfolded. *See United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010); *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004); *United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992); *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990); *United States v. Lowe*, 767 F.2d 1052, 1063-64 (4th Cir. 1985).

**L. Inextricably Intertwined Evidence**

"Inextricably intertwined" evidence is admissible under a well-settled exception to Rule 404(b)'s general ban on uncharged misconduct evidence. *See*, *e.g.*, *United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002) ("Evidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense. This exception applies when (1) particular acts of the defendant are part of a single criminal transaction, or when (2) 'other act' evidence is necessary to admit in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.") (citation omitted); *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) ("In general, evidence of other crimes committed by the defendant [] is inadmissible. However, an exception to this general rule is that evidence of other criminal activity may be used for the purpose of providing the context in which the charged crime occurred.") (citation omitted).

**M. Stipulations**

Where appropriate, the government may enter into stipulations regarding the facts. "When parties have entered into stipulations as to material facts, those facts will be deemed to have been conclusively established." *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976).

**N. Arguing Penalties**

Absent extraordinary statutes requiring the jury to participate in sentencing determinations, the *sole* function of the jury is to determine guilt or innocence. Punishment is within the exclusive province of the Court. *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970); *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971).

As such, it is improper for a party to elicit evidence that would allow the jury to speculate as to the punishment a defendant faces if convicted. *United States v. Feuer*, 403 F. App'x 538,

UNITED STATES' TRIAL BRIEF - 25

540 (2d Cir. 2010)(summary order)(absent exceptional circumstances,[3] "a defendant has no legal right to introduce evidence or argument regarding sentencing consequences"); *United States v. Cook*, 776 F. Supp. 755, 756-57 (S.D.N.Y. 1991) ("The function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear or prejudice. Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function.")(citations omitted). *See also United States v. Pabon-Cruz,* 391 F.3d 86 (2d Cir. 2004).

It is proper for the court to interrupt any arguments relating to punishment or appeals for mercy, *see United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir.1971), *Gretter v. United States*, 422 F.2d 315, 319 (10th Cir. 1970), and some cases have held that the Court is required to do so. *See United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971); *May v. United States*, 175 F.2d 994, 1010 (D.C. Cir. 1949); *see also United States v. Young*, 470 U.S. 1, 13 (1985)(stating that the "better course" would have been for the trial judge to interrupt defense counsel's improper argument rather than leaving it for the prosecutor to address on rebuttal).

To allow the jury to be swayed by arguments regarding possible punishment would be to permit them to violate their oath not to allow their verdict to be affected by sympathy. *See Del Toro*, 426 F.2d at 184 ("'To inform the jury (concerning) matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.'")

---

[3]    The Court of Appeals in *Feuer* cites to *Shannon v. United States*, 512 U.S. 573, 579 (1994), for an explanation of what "exceptional circumstances" would be. *Shannon*'s holding was that there is no requirement to give a jury instruction about the consequences of a not guilty by reason of insanity verdict. In so holding, however, the Supreme Court recognized that "an instruction of some form may be necessary under certain limited circumstances. If, for example, a witness or prosecutor states in the presence of the jury that a particular defendant would 'go free' if found [not guilty by reason of insanity], it may be necessary for the district court to intervene with an instruction to counter such a misstatement." 512 U.S. at 579.

(quoting *Pope v. United States*, 298 F.2d 507 (5th Cir. 1962)).

In short, counsel may not seek to inflame the prejudices of the jury or conjure up sympathy for the defendant by referring to the potential sentences and collateral consequences the defendant would face upon conviction.

## VIII.  CONCLUSION

This has been an outline of the case, a summary list of the witnesses who may testify, and a discussion of possible issues at trial.  Since issues not covered here might come up at trial, the United States would respectfully seek leave to submit further briefs as necessary to assist the Court.

RESPECTFULLY SUBMITTED this 9th day of July, 2021.

SHAWN N ANDERSON
United States Attorney
Districts of Guam and the NMI


By:    /s/  Rosetta L. San Nicolas
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

UNITED STATES' TRIAL BRIEF - 27