UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GUAM

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 20-CR-00021 |
|  | ) |  |
| Plaintiff, | ) | June 8, 2021 |
|  | ) | 1:12 p.m. |
| vs. | ) |  |
|  | ) |  |
| RICKY JAMES JR. SALAS SANTOS, | ) |  |
|  | ) | U.S. District Court |
| Defendant. | ) | 520 W. Soledad Avenue, Fl 4 |
|  | ) | Hagatna, Guam  96910 |
| _____ | ) |  |

TRANSCRIPT OF HEARING ON MOTION TO COMPEL DISCOVERY
BEFORE THE HONORABLE MICHAEL J. BORDALLO
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>

For Plaintiff:                    Rosetta San Nicolas, Esq.
                                  U.S. Attorney's Office
                                  108 Hernan Cortez Avenue, #500
                                  Hagatna, GU  96910

For Defendant:                    Brianna E. Kotkke, Esq.
                                  Federal Public Defender's Office
                                  400 Route 8, #500
                                  Mongmong, GU  96910

Court Recorder:                   Cynthia Sablan

Transcription Service:            Jessica B. Cahill, CER/CET-708
                                  Maukele Transcribers, LLC
                                  467 Maukele Place
                                  Wailuku, Maui, HI  96793
                                  Telephone: (808)244-0776

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
1    JUNE 8, 2021                                    1:12 P.M.
2            THE CLERK:  Please rise.  The District Court of Guam is
3    now in session.  The Honorable Michael J. Bordallo, Presiding.
4            THE COURT:  All right.  You may be seated.
5            THE DEPUTY:  Criminal case 20-00021, USA v. Ricky James
6    Jr. Salas Santos.  Motion hearing on the motion to compel
7    discovery.
8            Counsel, please state your appearance.
9            MS. SAN NICOLAS:  Buenos Hafa Adai, Your Honor.
10   Rosetta San Nicolas on behalf of the United States.  Good
11   afternoon, Your Honor.
12           THE COURT:  Good afternoon.
13           MS. KOTKKE:  Good afternoon, Your Honor.  Briana Kotkke,
14   Assistant Federal Public Defender, here with Mr. Santos.
15           THE COURT:  All right.  Good afternoon.
16           MS. KOTKKE:  So, Your Honor, at the outset I would move
17   under Rule 615 to exclude witnesses from this hearing.  And then
18   I also will be having -- I think just for housekeeping matters,
19   I'm going to be having people identify where they were at on a
20   map, if I can?
21           THE COURT:  I guess we'll -- you know, we'll decide --
22   I'm not sure what the witnesses are going to testify to and why
23   they're necessary.  So --
24           MS. KOTKKE:  Okay.  So I will tell you, here are my
25   overall goals on why I have all these people here.  I have
```

approximately four to five police reports, but all of these

officers were involved.  I don't know where they were, what they

were doing, what their role was, where certain evidence came

from.  There has been --

THE COURT:  And --

MS. KOTKKE:  -- evidence produced to me --

THE COURT:  But this is not a civil case where you can

take depositions to find out where you were, what you were doing

and -- this is a motion to compel discovery.  So --

MS. KOTKKE:  I understand that, Judge, and I need to

know how these people were involved.

THE COURT:  Again, all you're entitled to in the motion

for discovery is a ruling that if this discovery exists, you're

entitled to it.  So it's documents that are to be handed over to

you, not testimony in the form of deposition testimony or witness

testimony that we're going to take so that you get it that way.

MS. KOTKKE:  So the issue, Judge, is I don't know if

they wrote reports or if there are documents.

THE COURT:  But the only issue is if they wrote reports

you're entitled to it.

MS. KOTKKE:  That's not the only issue that I have

before the Court, Your Honor.

THE COURT:  For a motion to compel discovery it is.

Whether you're -- based on your reading of the discovery you have

and the Government's position on what it's given you, you may be

 1   entitled to a suppression motion or a mistrial if at trial things

 2   turn out to be different.  The problem is I don't see that as an

 3   issue now --

 4          MS. KOTKKE:  Well I'm --

 5          THE COURT:  -- in terms of how we're proceeding today.

 6   So that's why I need -- you know, I mean -- you know, the

 7   items --

 8          MS. KOTKKE:  Well, Judge, it's --

 9          THE COURT:  -- and I'm sorry.

10          MS. KOTKKE:  Oh, I'm sorry.  Go ahead.

11          THE COURT:  I didn't mean to interrupt, but there are

12   some issues about whether you're entitled to the second set of

13   discovery requests dealing with the policies and procedures

14   relating to drafting reports and that matter, but whether you're

15   entitled to that is really not going to be dependent on any

16   testimony.  It's going to be dependent on the Court's ruling in

17   terms of whether any defendant would be entitled to those kinds

18   of matters as we go along.

19          MS. KOTKKE:  Okay.

20          THE COURT:  The training reports of any agents, what

21   schools they went to, the training of those schools, the training

22   of the trainers and, you know, we can go ad nauseum how far back

23   you can theoretically seek that information to help or assist in

24   determining whether they followed it.

25          But again, I don't know that that's material and

1   relevant in terms of whether or not they followed their training

2   procedures because that may not be relevant on whether their

3   training procedures is the right way to proceed or not.  I mean,

4   that gets into another matter.

5          So what I want to hear, at least initially is, is where

6   we are, and what was given, and what in your -- you know, my

7   understanding is it was reduced, at least, from the original

8   matters.  You've got some stuff.

9          MS. KOTKKE:  Uh-huh.  So just yesterday morning, the

10  Government produced additional handwritten notes from an HSI

11  officer.  So I do believe that I am barking up the right tree

12  requesting that kind of stuff.  I've already been told that it

13  doesn't exist and yet yesterday morning, right before the

14  hearing, I get those reports.  So that's one thing that I really

15  would like to determine is whether or not individuals made field

16  notes, handwritten notes, rough notes, whatever you would like to

17  call them.

18         In particular, there's some reports from these few

19  agents who did write the reports that indicate very specific

20  times, like to the minute, of when things are happening during

21  surveillance and, I guess, my question would -- and what I'm

22  hoping to establish is that notes were written, but they have not

23  yet been produced.

24         THE COURT:  And again, that's not the purpose of a

25  motion to compel, and that's not the purpose or the entitlement

1  on pretrial, is to investigate whether or not a note was written.

2  What it's meant to establish is that if a note was written you're

3  entitled to it.

4          MS. KOTKKE:  Right.

5          THE COURT:  It may be relevant to you in terms of what

6  sanctions may be available or what testimony may be admitted at

7  trial if, I guess, at trial they say, well, you know, I wrote

8  those notes, and I gave it to the Prosecutor six months ago.

9  Then you may say, well, Judge, we've got a problem here because

10 none of that was turned over in discovery and what the sanctions

11 for that may be, but I don't know of any procedure where that's

12 to be proven pretrial that existed because even if it's proven it

13 existed, in the end what can I do except order that it be

14 produced, which you're entitled to.

15         I don't know that Ms. San Nicolas -- and I'll ask

16 Rosetta -- Attorney San Nicolas.  I think she agrees at least

17 under the authority that you've cited that if there are

18 handwritten notes at least under the Ninth Circuit Rules and the

19 Local Rules,  they're entitled to them.  Does the Government, I

20 guess, concede to that point?

21         MS. SAN NICOLAS:  Yes, Your Honor, we do concede to

22 that.  You're also --

23         THE COURT:  So with respect to that, Ms. -- then with

24 respect to that then the Court will grant the motion to compel

25 that any handwritten notes that exist must be turned over, but

1  that's different than what you're asking.  You're asking me can I

2  call every single witness to determine if they made handwritten

3  notes?  You're not entitled to that.

4          MS. KOTKKE:  Fair enough.

5          THE COURT:  Okay.

6          MS. KOTKKE:  So --

7          THE COURT:  So that takes care of, you know,

8  handwritten, rough and/or field notes of all officers or agents

9  involved in the investigation -- I guess it's nice that they're

10 here so they can hear what you're entitled to and, obviously,

11 everybody runs at their peril if they're destroying notes, or

12 hiding them, or assisting in understanding that the Defendant is

13 entitled to them and -- or I'm ordering the Government, pursuant

14 to the law -- it's the Ninth Circuit and the Local Rules -- that

15 they be turned over to you.  Okay.

16         MS. KOTKKE:  Together with those rough notes I would

17 also like any photographs or videos taken from the scene that

18 have not yet been produced.

19         MS. SAN NICOLAS:  Your Honor, I guess we'll go down the

20 line.  Your Honor, we did provide photographs of the --

21         THE COURT:  Well, my only -- again, my only question at

22 this point with respect to it is I understand that you've said

23 you've turned over, but if the Government's in agreement that

24 they're entitled to those things, then we can order that any of

25 those things that exist be turned over.

1          And obviously, the Government is under its duty not

2    only to -- you know, the excuse can't be I don't have it in my

3    possession because the Government has the duty to inquire among

4    people who it intends to call, whether they have it in their

5    possession, and the Government has to turn them over.  So if

6    there's no objection by Ms. San Nicolas to that, then those

7    things will be ordered to be turned over.

8          MS. SAN NICOLAS:  And, Your Honor, just for the record,

9    they were turned over.  There were photographs of the scene,

10   photographs of the Defendant, photographs of the Defendant's

11   vehicle, et cetera.

12         THE COURT:  Again, you know, everybody is on their --

13   you know, everybody who live and die by what their compliance is,

14   or noncompliance is.  Okay.

15         MS. KOTKKE:  So the next thing that I'm requesting is

16   policies and procedures because I'm entitled to mitigation as

17   well as impeachment evidence.  And I believe that the policies

18   and procedures of all of the agencies will allow me to better

19   determine what I need to do and whether or not there are

20   sanctionable motions regarding how this investigation was

21   conducted.

22         THE COURT:  Sanctionable motions?  I don't understand

23   what grounds you would have if somebody --

24         MS. KOTKKE:  Judge, I've been trying to put evidence on

25   to show you my grounds.

1          THE COURT:  No.  That's not my question.  My question

2    isn't what factual grounds you have.  My question is what legal

3    grounds do you have for the statement that if an agent totally

4    ignores his office policy, that that's a sanctionable motion.

5    What sanctions are you going to bring?

6          MS. KOTKKE:  Judge, I am entitled to impeachment and

7    mitigation evidence.

8          THE COURT:  I understand that but --

9          MS. KOTKKE:  And that can very well be impeachment

10   evidence.

11         THE COURT:  Okay.  But --

12         MS. KOTKKE:  And so --

13         THE COURT:  -- that's not the word you used.  The word

14   you used was sanctionable and --

15         MS. KOTKKE:  Which I take to mean --

16         THE COURT:  -- at least the way --

17         MS. KOTKKE:  -- a motion that I may be able to file --

18         THE COURT:  I'm sorry.

19         MS. KOTKKE:  -- that is viable and not --

20         THE COURT:  We're --

21         MS. KOTKKE:  -- frivolous.

22         THE COURT:  Briana, we're going to have some issues

23   here if we're going to continue to interrupt, okay.

24         MS. KOTKKE:  My apologies, Your Honor.

25         THE COURT:  All right.  So the point being is that,

1   again, we're dealing with training manuals that may exist

2   and -- or that exist and whether the agents may have followed

3   them or not followed these training manuals.  And you're saying

4   that you're entitled to them, so that's the argument I want to

5   hear.  But if the agent didn't follow them, I'm not sure what

6   recourse you have with respect -- I understand it's impeachment.

7   I'm not talking about impeachment because the word you used was

8   sanctions, and I don't know that there's any action that you,

9   representing the Defendant, can take against an agent because he

10  didn't follow his training manual.

11          Now is it impeachment?  That's fine but I just want to

12  clarify.  That's the only thing I wanted to clarify is that I

13  understand what you're seeking, but I guess my question to you is

14  it can keep going up the line because then do we want the manuals

15  that led to the manual because does the manual follow the manual,

16  you know.  I mean, are the teachers following -- did the ones who

17  taught them, were they following a course?  So where -- how far

18  up the line can we go, theoretically, in terms of what you feel

19  you're entitled to to determine, in the end -- I mean, if the

20  issue is just whether they followed the training manual that

21  can't be the issue.

22          The issue has to be of what relevance is it in terms of

23  impeachment?  One has to deal with whether it makes sense that

24  you write something, or you didn't write something, or it makes

25  sense that you took a picture, or you didn't take a picture.  And

1   in the end are those manuals really relevant to that?  Are they

2   material to that, you know?  Did you see him?  Yes.  Did you see

3   what he was wearing?  Yeah.  Well why didn't you write it down?

4           You know, is that sufficient impeachment or is it

5   material that you have a manual that says when you see what he's

6   wearing make sure you write it down?

7           MS. KOTKKE:  No, I guess, I would just like to know the

8   policies and procedures that were in place during the time of the

9   investigation.  I'm not looking for -- to go all the way up the

10  ladder at all.  I am just trying to zealously defend my client

11  and right now I don't have the normal information that I would

12  have as part of an investigation with this many law enforcement

13  officers involved.

14          THE COURT:  All right.

15          MS. KOTKKE:  You know, I have seriously, maybe three

16  individuals writing reports and yet we have 14 different officers

17  who were on the scene and involved.  And so I just want to know

18  what the expectations were and whether or not I have all the

19  information.

20          THE COURT:  Okay.  And can I get -- so that's the next

21  set of discovery requests or dispute dealing with the copies of

22  policies and procedures relating to drafting reports, drafting

23  records and otherwise preserving any actions taken during the

24  investigation.

25          MS. KOTKKE:  And Your Honor, it's more than that.  I

1    was hoping for documents relating to chain of custody --

2              THE COURT:  Yeah, no, I understand.

3              MS. KOTKKE:  -- correction of reports.

4              THE COURT:  That's down below.  I'm just looking at --

5              MS. KOTKKE:  And then, most importantly, preservation

6    of exculpatory evidence.

7              THE COURT:  So let me hear -- okay.  I'm sorry.  And

8    the most -- I missed the most important.

9              MS. KOTKKE:  The policy on preserving and producing

10   exculpatory evidence.

11             THE COURT:  Right.  So I was looking at your reply

12   on -- this is 1B --

13             MS. KOTKKE:  Uh-huh.

14             THE COURT:  So reports and policies and procedures.  So

15   that's what I was on.

16             MS. KOTKKE:  Okay.

17             THE COURT:  And so let me hear Ms. San Nicolas'

18   response, if anything, on that 1B, the reports, and policies, and

19   procedures.

20             MS. KOTKKE:  Yes, Your Honor.

21             MS. SAN NICOLAS:  Your Honor, the Defense states that

22   she wants to know the expectations, whether she has all the info.

23   She states she would like to know -- Your Honor, we contend that

24   this is a fishing expedition.  She apparently wants to use a

25   manual to cross-examine the officers.

1        Your Honor, the conclusory allegation that the manual

2   will help is not enough to show materiality.  The materiality

3   standard is that defined in the Armstrong case that will --

4   evidence that will refute the Government's arguments that the

5   defendant committed a crime.

6        Your Honor, a motion to suppress may turn on whether

7   evidence was obtained in the course of a custodial interrogation

8   in violation of due process or by coercive means that render

9   statements involuntary.  The Defense has not shown how these

10  manuals will bear on whether he was in custody, whether he was

11  interrogated, or whether he was coerced into making the

12  statements.

13       In the case of the HSI manuals it's even more

14  meaningless because this is not a HSI case of inspection,

15  admission, or removal.

16       Your Honor, we contend that this is a fishing

17  expedition.  The Defendant is entitled not to the sword claims

18  but to the shield claim.  The claims that refute the Government

19  argument that the Defendant committed the crime.

20       In short, Your Honor, whether there's a suppression

21  motion, they're informed by the constitution, not whether our

22  agents followed any internal policies.  Your Honor, I'd like to

23  cite to the Federal Rules of Criminal Procedure, the -- to Rule

24  16.  Your Honor, I have the 2021 version.  It basically states

25  that this is information that is not subject to disclosures.

1          In the 2021 version, Your Honor -- this is on page

2    93 -- it states information not subject to disclosure,

3    memorandum, or internal government documents made by an attorney

4    for the Government or other government agent in connection with

5    investigating a prosecutor in this case.  Your Honor, the manuals

6    fall under that because they are documents -- they are basically

7    the work product between the agent and their legal counsel.

8          I also ask the Court to review the Advisory Committee

9    notes.  The 1974 amendment on page 98 of the 2021 edition states

10   that, quote, "the only proposed changes that the reports,

11   memorandum, and other internal government documents made by the

12   attorney for the government are included to make clear that the

13   work product of the government attorney is protected."

14         Your Honor, there is cited also in the -- on page 101

15   of the same rule -- again explaining that work product is a

16   mental impression, conclusions, opinions or legal theories of the

17   attorney for the Government or other government agencies. Those

18   manuals are the work product between the agency and the agent.

19   They are not public knowledge.

20         Also, for the record, Your Honor, the agents have no

21   authority to disclose that to the Defense on request and, also

22   for the record, their legal counsel has advised them that they do

23   not have that authority.  They consider that these documents are

24   privileged and not releasable to the public.

25         Your Honor, a conclusory allegation that the manuals

1 will refute this charge is not a material showing.  Again the
2 Defense has stated she wants to know the expectations.  She wants
3 to know whether she has all the information regarding the manual.
4 And, Your Honor, we just note that under Rule 16, these are items
5 that are not to be -- not subject to disclosure.  This is
6 essentially a fishing expedition, and we request that the motion
7 for any field manuals for all of the agencies: HSI, DEA, and
8 postal, any agency involved in this investigation be denied.  On
9 that point, Your Honor, we submit.

10            THE COURT:  All right.  Ms. Kotkke, just on that issue,
11 the copies of the policies and procedures.

12            MS. KOTKKE:  Thank you, Your Honor.  So this issue goes
13 a lot deeper.  This isn't a normal motion to make a request for
14 discovery like this.  This is actually the first time I've ever
15 done this.  And one of the reasons why I'm doing this is because
16 I am trying to determine whether or not there is a pattern of bad
17 faith.

18            We have a sealed case that was just before Judge
19 Gatewood that has many of the same agents doing many of the same
20 things.  Failing to write reports, making corrections to reports.
21 And as I said in my reply brief, which is document 58 at page 2,
22 you know, one of the quotes that I put in here is from the
23 Carrasco, which is one of the seminal cases regarding the issue
24 of failed notes and other things like that, and they all tie
25 together.

1          The danger in failing to take appropriate notes during

2    an investigation, especially surveillance, is that the officer

3    may, quote/unquote, "adapt a final report" or, quote, "tailor his

4    unrecorded observations to fit the conclusions."  And the reason

5    why I'm concerned in this case is that appears to be happening as

6    one of the agents changed the color of the shirt to match what

7    all the other agents said.  And why this is important, Your

8    Honor, is because that was exculpatory evidence that was turned

9    over to us only after many supplemental discovery requests.

10         In addition, there was a Clue Spray search that was

11   completed and the only reason I found out about it is because

12   Ricky told me.  He had no Clue Spray found on him anywhere.  That

13   is exculpatory evidence.  That was not given to me until I

14   specifically requested that.

15         And so the reason why I am looking for the policies and

16   procedures is to see what the expectations were and whether or

17   not we have a pattern of bad faith.  And I have requested all of

18   the transcripts from the prior sealed hearing, because I do think

19   that they're relevant.  I didn't bring them with me today because

20   I thought that that would probably be overkill, but the -- let's

21   see, where's the --

22         And the other reason why this is important and if there

23   are -- if there should have been reports written but there

24   weren't reports written that could contain exculpatory evidence,

25   Brady and its progeny requires all of that to be disclosed.

1   Because of Brady, it's very likely that the applicable law

2   enforcement policies and procedures will set out the expectations

3   about preserving exculpatory evidence as well as producing

4   exculpatory evidence.  And that's why, you know, their training

5   in that area is important too because, after all, if they haven't

6   been trained in that area that's one thing.

7              And so if the agent -- if the agent -- the other thing

8   that is strange about the Clue Spray thing is that the agent who

9   actually conducted the Clue Spray analysis did not write a

10  report.  I have no report from him.  It was actually a superior

11  who gave, basically, a third-hand, you know, recitation of what

12  occurred.  And I want to know if that is appropriate or whether

13  that was written after the fact, after I had requested

14  supplementary discovery about it.  Because it appears to me that

15  it would never have been written and would never have been

16  disclosed had I not requested it, specifically, and that is in

17  violation of Brady, absolutely, on its face.

18             And so like I said I usually do not ask for stuff like

19  this.  I don't file motions to compel, but there's something

20  about this case that is not right.  And it's stuff like that,

21  Your Honor, and without having these documents it's like trying

22  to prove a negative.

23             You know, and the other thing that I will note about a

24  lot of this is that Ricky has been incarcerated this entire time

25  while we're fighting about discovery.  This is -- you know, he's

1    been incarcerated since December.  I've been asking, and asking,

2    and asking and getting no response.  And so after I filed the

3    motion to compel, I did get a gigantic flurry of discovery coming

4    in, but it still has not answered a lot of the questions that

5    I've laid out here.

6         And so I think it's so much more than just are they

7    following their policy?  Is this policy even good policy?  I

8    don't care about that kind of stuff.  I want to know what they've

9    been trained in and whether or not they are -- they are violating

10   rules as important as exculpatory evidence, Your Honor.  He is

11   presumed innocent, and I don't know how else to explain or how to

12   show potential evidence of bad faith on the part of certain

13   agencies without this type of material.

14        And as to the fishing expedition, as I said, I do not

15   want anything other than the relevant policies on those topics at

16   the time that this investigation occurred.  As far as opening the

17   floodgates, or giving away investigative secrets, or things of

18   that nature, that can be completely mitigated by having Your

19   Honor review everything in-camera and determine whether or not

20   that's appropriate or what I would prefer would be to have a

21   protective order so that I can't share it with anybody.  It's

22   just for my own evaluation of the case in determining how I can

23   best defend Ricky Santos.

24        And so I think it's -- I think the floodgate arguments

25   is just not applicable here because we can do a protective order

1  and then I couldn't show it even to my own client without

2  permission of the Court.  So that mitigates that risk.  Thank

3  you, Your Honor.

4           THE COURT:  All right.  Thank you.

5           All right.  The third item is -- well, I don't know,

6  missing reports on all areas of investigations, and I think

7  that's akin to your -- I don't know if that's part of your

8  argument with respect to the training manuals that it appears

9  that some reports that should have been made were not made, but I

10  -- you know, unless you mean physically missing reports, reports

11  that exist, but have not been handed over, obviously, the

12  Government, under the disclosure rules, has to hand over what it

13  has.

14           I don't know that -- what I can do in terms of

15  compelling them to hand over a report that is physically missing,

16  but whatever circumstances are there -- those really need --

17  again, need to be explored in another avenue to determine whether

18  they're intentionally physically missing or whether -- or what

19  the circumstances are, but it's -- I don't know that it's for a

20  motion to compel.

21           Number four is Brady, Giglio and Henthorn materials on

22  all Government witnesses, including all the law enforcement

23  witnesses that have been named.  Again, I think the Government is

24  aware of its duty to disclose anything with respect to that and

25  the Defense is entitled to the items that are relevant under

1    those rules but again, the way the rule operates is the
2    Government needs to review the relevant personnel files and
3    determine if anything there is -- should be disclosed just as it
4    needs to do for any Brady materials or any other materials.  And
5    the Government will, for the record, be ordered to do that and
6    turn it over.
7            Item five, any and all materials, reports,
8    surveillance, witness statements, and confidential informant
9    statements relating to the investigation of any other individual
10   or individuals, including Ricky's family suspected in this
11   investigation.  Ms. Kotkke, if you can give us your argument on
12   that request?
13           MS. KOTKKE:  Thank you, Your Honor.  Well, this request
14   is another subset of Brady.  You know, evidence that somebody
15   else is suspected of committing a crime is obviously
16   discoverable.  In all circuits that has been held that --
17           THE COURT:  Of committing the crime at issue here, you
18   mean?
19           MS. KOTKKE:  Yes, Your Honor.
20           THE COURT:  All right.
21           MS. KOTKKE:  If somebody else was suspected of
22   committing the crime at issue here, being --
23           THE COURT:  Then that --
24           MS. KOTKKE:  -- distribution of methamphetamine --
25           THE COURT:  -- in some ways that's, you know,

1 exculpatory evidence, I suppose. If you suspect it wasn't Ricky,

2 but it was Joey, then that's obviously exculpatory to Ricky.

3 MS. KOTKKE: Exactly, Your Honor. And there have been

4 statements made that they were specifically looking at one of

5 Ricky's family members, his brother. And so I would like to know

6 if he was, in fact, a suspect and if there are reports relating

7 to the investigation of him.

8 THE COURT: The conclusion that led to that -- if he

9 was a suspect would have led to that, I guess, conclusion or

10 suspicion, and whether that evidence, I guess -- in other words,

11 oh, because his brother was seen holding the bag or something of

12 that nature.

13 MS. KOTKKE: That's correct. Yes.

14 THE COURT: All right.

15 MS. KOTKKE: Or like, you know, there's been a Tenth

16 Circuit case that it was reversible error not to disclose the

17 existence of a suspect who resembled the defendant. The Fifth

18 Circuit has held failure to disclose police reports indicating

19 guilt of another was reversible error. The Second Circuit,

20 reversible error not to disclose evidence that a person other

21 than the defendant committed the murders.

22 So exactly, it's in the exculpatory lane. And then the

23 other reason why I'm requesting that is because in the

24 photographs that were submitted by the Government, there were

25 mail -- pieces of mail that were found at the home that -- I want

1    to say there's at least six, definitely five, but I think six

2    different people whose mail was identified there, and whether,

3    you know, those people were ever suspects or not.  And I can

4    submit the photos of those if Your Honor would like.

5           THE COURT:  No.  I can't remember whether I read it in

6    the motion or -- that dealing with that there were multiple

7    people who received -- well it's not uncommon on Guam, right?

8           MS. KOTKKE:  Right.

9           THE COURT:  Multiple family members receiving mail

10   at -- one residence is the designated residence.  All the

11   brothers and sisters receive their mail there or something like

12   that.

13          MS. KOTKKE:  Yes, and this is -- this particular house,

14   I've just learned, is actually -- his aunt and a cousin of

15   Ricky's actually live there and were living there at the time,

16   so.

17          THE COURT:  Okay.  So the Court understands your

18   argument to that.  Let me hear Ms. San Nicolas' response, if any,

19   on that item five.  Any and all materials with the statements

20   relating to the investigation of other -- again, with the caveat,

21   Ms. Kotkke, that it's limited to suspicion of the crime at issue

22   here.

23          MS. KOTKKE:  Correct, Your Honor.

24          THE COURT:  Okay.

25          MS. SAN NICOLAS:  Your Honor, we have provided the

1    reports -- we've -- most importantly, Your Honor, we've provided

2    the results of the search warrant.

3             THE COURT:  Okay.

4             MS. SAN NICOLAS:  There were no other people suspected

5    of committing this crime.  This is a package case.

6             THE COURT:  But for the record, I guess again dealing

7    with the premise, the premise then you don't have a problem with,

8    if, in fact, the Government has -- you know, if somebody wrote a

9    report that I think it's his brother who did this, that they

10   would be entitled to it as, basically, exculpatory evidence?

11            MS. SAN NICOLAS:  Your Honor, if we encounter anything

12   of that sort we would immediately disclose it.  I have not

13   encountered anything of that sort.

14            THE COURT:  Okay.

15            MS. SAN NICOLAS:  And just for the record --

16            THE COURT:  Okay.  So --

17            MS. SAN NICOLAS:  -- he was the only target.

18            THE COURT:  Again, so the Government -- at least if the

19   Government understands and agrees with the Court then we can

20   order it for the record.  So it's of record that these things

21   have been ordered to be turned over.

22            If they don't exist that's fine, but the Defendant is

23   entitled to have that record set so that they can utilize it if

24   it becomes necessary at trial if these things all of a sudden pop

25   up.  Well here's -- what's this?  Well, you know, this is what we

1    were ordered of record to turn over, okay?

2              MS. SAN NICOLAS:  I understand, Your Honor.  We

3    understand.

4              THE COURT:  Okay.  Thank you.

5              All right. So item number six, all licenses and

6    necessary certifications from the Cellebrite or other software

7    used to image or review phones.  What is the issue with that, Ms.

8    Kotkke, and what's the justification for that?

9              MS. KOTKKE:  Thank you, Your Honor.  So on this one

10   after I filed the motion to compel I did receive Mr. Whelan

11   (phonetic), I believe is how you say it, his CV, his -- one of

12   the licenses, but it's not necessarily the current one.  So what

13   I'm looking for is to make sure that the program -- computer

14   program that he's using has all the updates that it's supposed

15   to, that it is the current license, and that it is the

16   appropriate program, because the Cellebrite program gets updated

17   regularly.

18             And so I haven't not yet been able to determine whether

19   or not he was using the appropriate software, the most current

20   software.  And if it turns out that he wasn't, then it may be --

21   the need for me to hire a computer expert and that sort of thing

22   for purposes of trial and potentially a motion to suppress.

23             THE COURT:  All right.  And let me hear the

24   Government's response, if any.

25             MS. SAN NICOLAS:  Your Honor -- yes, Your Honor.

1          Your Honor, for the record, we have provided Nick

2   Whelan's (phonetic) extraction, his notes regarding the

3   extraction of the cell phone.  They're located on document -- or,

4   I'm sorry -- what is called Bates number 353 through 366.

5          THE COURT:  And I guess their concern is the process by

6   which he extracted, and the software he used, and whether --

7          MS. SAN NICOLAS:  Yes, Your Honor.  So for each of the

8   phones that he extracted, Nick Whelan also provided his

9   declaration.  There is also his curriculum vitae, as well as his

10  after action report.  Importantly, Your Honor, he has notes that

11  were provided.  The notes indicate the device, the status of the

12  extraction, the device that was extracted, and Defense can

13  certainly review that.  So we have complied with that, Your

14  Honor.  We complied with that back in October -- October 21st,

15  2020.

16         THE COURT:  And again my concern, at least for purposes

17  of this motion to compel, is the Government then agrees that they

18  are entitled to it.  I know your defense is what we've provided

19  to them, but do they agree they are entitled to it so that, for

20  the record we can note that?

21         MS. SAN NICOLAS:  Yes, Your Honor.

22         THE COURT:  All right.  So again, with that, we'll

23  order it to be turned over and the Government, if it's in

24  compliance, that's fine, it's in compliance.

25         The last item is chain of custody documents and

evidence logs from all evidence collected during the
investigation.  Ms. San Nicolas, what's the Government's position
on the chain of custody?

MS. SAN NICOLAS:  Your Honor, the discovery on the
chain of custody was served on the Defendant on September 25,
2020.  I've called that Exhibit 3 in my response.  The pages in
particular are Bates stamp 338 to 348.  They are called the DEA
Sixes.

THE COURT:  And let me find out from Ms. Kotkke
what -- because this is her reply.  So what additional -- or is
there a particular piece of evidence that you think is missing
the chain of custody, or is it several pieces, or what's the
status of that?

MS. KOTKKE:  Yes, Your Honor.  I'm still working on
tracking each piece and whose hands touched it, but I am missing
significant chunks of the chain.  Under Ninth Circuit law, and
Ms. San Nicolas and I have talked about this, that is more of a
weight rather than an admissibility issue.

And so if they are going with what they have provided
as their chain of custody and are saying that that's it, and they
have provided it, I think that that's more of a trial issue, but
I would still request that they be ordered to turn over any --

THE COURT:  Yeah, because of --

MS. SAN NICOLAS:  -- additional chain of custody.

THE COURT:  -- I mean, obviously -- I mean, the same

1  thing with all these things.  I don't know that -- some of them

2  the sanctions may be, you know, like you say, suppression of it

3  or non-allowance of it.  A sanction may rise to the level of a

4  mistrial if the chief judge, during trial, should find that the

5  non-compliance was so egregious that mistrial may be -- or the

6  Court at the time may find that the evidence just wasn't material

7  and, therefore, it can, you know, the non-compliance is harmless.

8         So, you know, that's the range but at least we -- I

9  just want to make sure that the Defendant and the Government are

10 aware of what the requirements are and what the motion is

11 granting.

12        It appears to me that the only issue, really, that the

13 Court needs to decide and will take under advisement is the issue

14 of the policies and to what extent the policy and procedures

15 manuals are discoverable or if, as the Government argues, they're

16 just not -- non-discoverable as internal documents shielded from

17 Rule 16.  The Court will take that matter under advisement.

18        With respect to the other items the Government has

19 conceded, I think to the most part, that, yes, you're entitled to

20 them, but has argued that they've all been provided.  And so the

21 Government, obviously, in that respect, is under an ongoing duty

22 to do two things.  Number one, to check with the agents to make

23 sure everybody has used due diligence to find these things if

24 they've not been turned over and if things are found to

25 immediately turn them over.

1          But again it's hard to prove -- as we know, it's hard

2   to prove a negative.  Well how do I prove that I don't have it?

3   I can only say I don't have it, or it doesn't exist.  But then,

4   as I've stated, then the Government and the Defendant will be

5   entitled to rely on that, and should it turn out not to be true

6   or other things come to light at trial then the appropriate

7   motions can be made at that time.

8          All right, Ms. Kotkke, anything else?  So I think I've

9   gone down all the items that are listed on the reply brief as

10  still -- that you sought orders and the Court will issue its

11  recommendations and decision on those issues.

12         MS. KOTKKE:  Yes, let me just doublecheck my notes

13  here.

14     (Counsel reviews notes)

15         MS. KOTTKE:  Yeah, so the only thing that I believe

16  that I may be missing -- well, you already ordered for the

17  reports to come through, but I do have only one of Officer, K-9

18  Officer Jeremy Arquero's (phonetic) reports regarding the K-9

19  biker alerting the presence of drugs.  And there are probably

20  missing, I think, probably two reports besides that, best I can

21  tell, and he's the only one that I discovered was missing reports

22  in the last week, and I haven't had a chance to talk to Ms. San

23  Nicolas about that.

24         THE COURT:  All right.  So find out so they can --

25  again, it's hard to say you're ordered to turn over missing

1    reports, because I don't know what -- it's tough to determine

2    what exists and then whether it's missing but obviously, pursuant

3    to the Court's, kind of, ruling here today those things that

4    we've determined the Government does not object to then,

5    obviously, they need to turn those over.

6           The Court will issue a ruling as soon as possible on

7    the issue of the training manuals that have been requested.  All

8    right?

9           MS. KOTKKE:  Thank you, Your Honor.

10          THE COURT:  Anything else, Ms. San Nicolas?

11          MS. SAN NICOLAS:  Your Honor, I just would like to note

12   that we have provided notes, we've provided the bar code for the

13   chain of custody.

14          THE COURT:  Yeah.

15          MS. SAN NICOLAS:  If we encounter anything we will

16   certainly disclose it.  We're aware of our discovery obligations.

17   Your Honor, we have made every effort to disclose --

18          THE COURT:  Well, they're all here now so you can ask

19   them one last time as they leave.

20          MS. SAN NICOLAS:  Yes, Your Honor.

21          THE COURT:  Okay.

22          MS. SAN NICOLAS:  Thank you.

23          THE COURT:  All right.  Thank you, everybody.

24       (Proceedings adjourned at 1:52 p.m.)

25

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated: July 30, 2021

Jessica B. Cahill, CER/CET-708